# Commonwealth v. Schoen, Appellant.

*Criminal law—Defect in information—Trial on the merits.*

Where an indictment is regularly found by the grand jury, and the defendant pleads thereto and goes to trial on the merits, all defects and irregularities in the information, warrant, and proceedings before the magistrate must be held as cured.

*Criminal law—Indictments—Form of indictment—Appeals.*

Where the defendant in a criminal case has raised no question as to the form of the indictment in the court below, he cannot raise it for the first time on appeal.

*Criminal law—Indictments—Several charges.*

While a defendant cannot be indicted in one bill for several distinct and unrelated felonies, yet it is well settled that a bill of indictment may contain several counts, charging several offenses if they all arise out of the same transaction ; and any number of misdemeanors may be charged in one bill of indictment.

*Criminal law—Indictments—Several charges—Disorderly house—Bawdy-house.*

A woman may be convicted on an indictment containing two counts charging her with maintaining a disorderly house and maintaining a bawdy house. She may also be convicted on an indictment containing three counts charging her with maintaining a bawdy house, maintaining a disorderly house, and being a frequenter of a bawdy house.

A woman may be indicted at common law for frequenting a bawdy house.

Argued April 11, 1904.   Appeals, Nos. 31 and 40, by plaintiff, from judgment of Q. S. Phila. Co., Jan. T., 1904, No. 529, on verdict of guilty, in case of Commonwealth v. Martha Schoen and Bertha Thompson.   Before RICE, P. J., BEAVER, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Indictment for keeping a disorderly house.

The information upon which the warrant for the arrest of the defendants was issued was as follows :

Personally appeared before me, the subscriber, William Eisenbrown, magistrate of court No. 9, of the said city, J. F. Brounley, 920 Walnut street, Philadelphia, Pa., who being duly sworn according to law doth dispose and say, that a woman, gray hair, about 5 ft. 4 in. tall, weighs about 150 pounds, about 55 years of

age, name believed to be Mrs. Quigley ; and a woman, dark complexion, about 5 ft. 8 in. tall, weighs about 170 lbs. about 35 years of age ; and a woman, dark complexion, about 5 ft. 6 in. tall, weighs about 125 lbs., about 27 years of age; and a woman, fair complexion, about 5 ft. 5 in. tall, weighs about 125 lbs., about 23 years of age; and a man, dark complexion, about 5 ft. 6 in. tall, weighs about 135 lbs., about 24 years of age, at 1008 Race street, Philadelphia, Pa., did at said place, within two years past, sell intoxicating liquor without a license, and did at said place maintain a common and ill-governed disorderly and bawdy house, and public nuisance, and place for the common resort of idle, disorderly and drunken persons, to the common nuisance of the neighborhood and orderly citizens.

Other facts appear by the opinion of the Superior Court.

*Errors assigned* were (2) in not dismissing the bills of indictment'; (3–5) portions of charge quoting them.

*John H. Fow*, with him *William T. Kelsh*, for appellant.

*Joseph H. Taulane*, assistant district attorney, with him *John C. Bell*, district attorney, for appellee.

OPINION BY MORRISON, J., May 10, 1904:

The defendants, with others, were indicted on two separate indictments, and on trial were found guilty in each case, and being sentenced to pay fines and to imprisonment appealed to this court. The first questions raised by the appellants go solely to the informations and warrants upon which they were arrested and brought before the committing magistrate, and the learned counsel for the defendants has made an elaborate argument seeking to convince this court that the constitutional rights of the defendants were violated on account of certain alleged irregularities in the informations and proceedings before the magistrate.

But the record discloses that at no time prior to their conviction and this appeal did the appellants raise any question as to the form or sufficiency of the information.

No motion was made to quash the bills of indictment, neither

were the bills demurred to, nor was a motion made in arrest of judgment.

In short the question as to the sufficiency of the informations is raised for the first time in this court.

We are of opinion that it is entirely too late to raise any such question after indictment found and a conviction had. Where an indictment is regularly found by the grand jury and the defendants plead thereto and go to trial on the merits all defects and irregularities in the information, warrant and proceedings before the magistrate must be held as cured. We think this question is ruled by Commonwealth v. Brennan, 193 Pa. 567, where the information charging the defendant with murder was not signed by the prosecutors. In that case the opinion of the Supreme Court is brief and is as follows : " The defendant was tried upon an indictment found regularly by the grand jury upon examination made before a magistrate. A trial was had upon the merits and the defendant was duly convicted of murder of the first degree. On the trial a motion was made to quash the indictment because it was not found after an information sworn to and subscribed before the committing magistrate. While the defendant might have been heard on that subject upon a proceeding to be discharged from custody on the ground of an illegal commitment, it is certainly too late after indictment found upon the trial of the cause. The final indictment cannot be invalidated for any such reason.

" The judgment is affirmed and the record is remitted for the purpose of execution according to law."

Other authorities might be cited upon this question, but we deem it unnecessary as the law is too well settled in Pennsylvania that an indictment regularly found and pleaded to, followed by a trial upon the merits, cures all defects in the preliminary proceedings.

The next question raised is as to the form of the indictments. This question was raised for the first time in this court on appeal. There was a motion in the court below to dismiss the indictments, but the record shows it was based solely upon the supposed insufficiency of the evidence to sustain a conviction, and nothing was said about the form of the bills of indictment or of any defects therein or the misjoinder of the counts.

" Every objection to any indictment for any formal defect, apparent upon the face thereof, shall be taken by demurrer, or on motion to quash such indictment, before the jury shall be sworn, and not afterwards: " Act of March 31, 1860, sec. 11, P. L. 427.

In Commonwealth v. Hand, 3 Phila. 403, the defendant charged in one bill with two distinct offenses, having pleaded to the indictment and gone to trial without raising any objection, Judge ALLISON refused to arrest the judgment. In Kilrow v. Com., 89 Pa. 480, it was held " that while duplicity in criminal cases may be objected to by special demurrer, or perhaps general demurrer, or be ground for an application to quash the indictment, yet the better view is that it cannot be made the subject of a motion in arrest of judgment, or of a writ of error."

It should be borne in mind that the appellants raised no question as to the form of indictment in the court below, and therefore, they cannot raise it now for the first time on appeal.

But in addition to this it is not apparent that the appellants could at any stage of the proceedings have raised any question as to the joinder of the counts in these bills of indictment. It is true that a defendant cannot be indicted in one bill for several distinct and unrelated felonies, yet it is well settled that a bill of indictment may contain several counts charging several offenses if they all arise out of the same transaction ; and it is well settled that any number of misdemeanors may be charged in one bill of indictment. " If the same acts constitute two or more offenses counts charging each offense are properly joined : " Sadler on Criminal Procedure in Penna. par. 227, page 269. In Hollister v. Commonwealth, 60 Pa. 103, it is said: " It would not do to hold a defendant convicted on an indictment in form for burglary strictly liable to be sentenced under this section by changing the averments, or assuming them changed to suit the conviction. In fact it is not the same offense, although it partakes of its nature; and I have no doubt but it might be joined in the same indictment. But it would be as necessary to set forth the charge, so as to bring it within the offense described in the section, as it is necessary to set forth the essentials to constitute the crime of burglary." This we understand authorizes the indictment of a defendant in one

bill for statutory and common-law burglary.   But of course the charges must be properly set out in separate counts.   In Nicholson v. Commonwealth, 91 Pa. 390, it was held "there was nothing wrong in adding the counts for fornication and bastardy to the count for seduction.   They are offenses of the same nature."   In Commonwealth v. Shutte, 130 Pa. 272, it was held "that a defendant was properly indicted in two counts, one charging robbery and the other larceny as bailee." See 2 Chitty's Criminal Law, 39, 40, where a precedent is given for joining in one bill of indictment separate counts for maintaining a bawdy house and maintaining a disorderly house.

In the cases under consideration the first bill of indictment contains two counts charging the appellants with maintaining a disorderly house and maintaining a bawdy house, and the second bill of indictment has three counts, charging them with maintaining a bawdy house, maintaining a disorderly house and being frequenters of a bawdy house.

We consider the first bill of indictment in exact accord with all the precedents, and the authorities appear to fully sustain it.

The supposed difficulty in the second indictment is the joining a third count charging the appellants with being frequenters and inmates of a bawdy house.

It clearly appears that the offense of frequenting and being inmates of a bawdy house grew out of the same facts as those alleged in the first and second counts charging the appellants with maintaining and keeping a disorderly house and a bawdy house.   The three offenses were misdemeanors and under the authorities they could undoubtedly be joined in one bill of indictment.   In Commonwealth v. Gillespie and another, 7 S. & R. 469, it is said (p. 476): " These several charges, as laid in the indictment, are different modes of laying the same offense.   But if the offenses were different, separate offenses, it is no objection either on demurrer or in arrest of judgment, that separate offenses of the same nature are joined against the same defendant.   Even in case of felony, though it be true that no more than one offense should regularly be charged, in one indictment, and that the court would quash the indictment before plea, or, if on the trial, the court should think it might confound the prisoner, they may exercise a discretion in compelling the prosecutor to elect on which charge he will proceed,

yet even in felonies there is no objection to the insertion of several distinct offenses of the same degree, though committed at different times, in the same indictment against the same offender; and it is no ground of demurrer, or in arrest of judgment, and counts, where offenses are of the same nature, counts at common law, and on a statute may be joined : 1 Chitty, C. L. 175. In misdemeanor no objection can be made to joining several in the same indictment in any stage of the proceeding: 2 Burr. 984. Nor does it form any objection that several are joined in the same indictment, for the same act." See Commonwealth v. Gouger, 21 Pa. Superior Ct. 217.

In our opinion if the appellants conceived that they were prejudiced by the joinder of the counts in the bill of indictment they should have asked the court to compel the commonwealth to elect on which count it would try. It is entirely too late after conviction to raise this question on appeal. We discover no merit in the assignments of error on this question.

In our opinion it is too clear that the defendants were properly indicted and convicted on the first two counts in each indictment to require discussion or citation of authorities. But the learned counsel so strenuously contends against the conviction on the third count which charged the defendants with being frequenters and inmates of a bawdy house that we feel called upon to briefly notice some of the authorities which seem to sustain this count.

The third count of the second indictment charges the appellants as follows : " Being an evil disposed person and contriving and intending the morals and manners of the people of the said commonwealth to debauch and corrupt, did then and there unlawfully, openly, notoriously, lewdly, scandalously and knowingly frequent a certain bawdy house of ill fame there situate, to the subversion, corruption and debauchery of the morals and manners of the good people of the said commonwealth." Lord Coke in his Third Institute, chap. 98, pages 205–206, says : " The keeping of them (bawdy houses), is against the law of God on which the common law of England of that case is grounded. And the keeper, he or she, of such house, is punishable by indictment at the common law by fine and imprisonment; for although adultery and fornication be punishable by the ecclesiastical law, yet the keeper of a house of bawdrie

or stewes, or brothel house, being as it were a common nuisance, is punishable by the common law, and is the cause of many mischiefs, not only to the overthrow of the bodies and wasting of their livelihoods, but to the endangering of their souls," etc.

"It appears to be an established principle that whatever openly outrages decency, and is injurious to public morals, is a misdemeanor:" 1 Russell on Crimes (6th ed.), page 748.

"The last offense which I shall mention, more immediately against religion and morality, and cognizable by the temporal courts, is that of open and notorious lewdness; either by frequenting houses of ill fame, which is an indictable offense, or by some grossly scandalous and public indecency, for which the punishment is by fine and imprisonment:" 4 Blackstone's Commentaries, 65.

Clark and Marshall, Law of Crimes, vol. 2, par. 458, page 1102, says: "It may, therefore, be laid down as a general rule, as above stated, that any act which has a direct tendency to corrupt the public morals, or which tends to shock the public sense of morality and decency, is a misdemeanor, whether covered by any statute or not."

The evidence justified the jury in finding that the appellants were frequenters of a notorious bawdy house and inmates thereof and had been so for a long time; that on several occasions the appellants were in the house assisting in the conduct and management thereof, and on many occasions solicited callers at the house to go upstairs with them for the purpose of prostitution; that at other times the appellants went upon the streets and picked up men and brought them to the house for the purposes of prostitution; that the misconduct of the appellants in openly frequenting this notorious house of prostitution was not secret and private, but it was public and notorious. Can it be doubted that the conduct of the appellants tended to corrupt public morals, debauch the youth and outrage decency and propriety? It has been held that if a person be indicted for frequenting a bawdy house, it must appear that he knew it to be such a house; and it must be expressly alleged that it is a bawdy house and not that it is suspected to be so. In the cases under consideration the indictments charged the defendants with the guilty knowledge and also alleged that the house was a notorious bawdy house.

In Commonwealth v. Sharpless, 2 S. & R. 91, the defendant was indicted and convicted of exhibiting an obscene picture. There was no statute defining the offense, but the defendant was convicted on the ground that his conduct constituted a misdemeanor at common law. In that case (p. 101) Chief Justice TILGHMAN said: "What tended to corrupt society, was held to be a breach of the peace and punishable by indictment. The courts are guardians of the public morals, and therefore have jurisdiction in such cases. Hence it follows, that an offense may be punishable, if in its nature and by its example, it tends to the corruption of morals; although it be not committed in public. . . . . The third and last reason is, that the indictment does not lay the defendant's house to be a nuisance, or the act of the defendants to be to the common nuisance of all the citizens, etc. The answer is plain. It is not an indictment for a nuisance, but for an action of evil example, tending to the corruption of the youth, and other citizens of the commonwealth, and against the peace," etc.

In Barker v. Commonwealth, 19 Pa. 412, the defendant was indicted and convicted for uttering wicked, infamous and indecent words. Mr. Justice LEWIS said, "It would be reproach upon the common law if such acts were not held to be indictable as a gross misdemeanor."

The jury must have found that the appellants assisted, aided and abetted the alleged proprietress in the conduct and management of the house, and if so, they are guilty with her as principals. The evidence tends strongly to show that they lived in the house and were the girls whom the men visited for improper purposes. It is clear that the appellants were indispensable adjuncts to the conduct of the house. "The authorities agree that there are in misdemeanor no accessories either in name or in the order of the prosecution. When, therefore, one sustains in misdemeanor a relation which in felonies makes an accessory before the fact, if what he does is of sufficient magnitude, he is to be treated as a principal:" 1 Bishop on Criminal Law (8th ed.), par. 685, p. 417.

"Any one who procures, aids, abets or encourages the keeping of a house of ill fame is guilty as principal, there being no accessories in misdemeanor:" 2 McClain on Criminal Law, par. 1141, page 301.

In Commonwealth v. McHale, 97 Pa. 397, Chief Justice PAXSON said (p. 410) : " We are of opinion that all such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found in the books, but whether they injuriously affect the public police and economy.

It needs no argument to show that the acts charged in these indictments are of this character. They are not only offenses which affect public society, but they affect it in the gravest manner. . . . Surely, if a woman's tongue can so far affect the good of society as to demand her punishment as a common scold, an offense which involves the right of a free people to choose their own rulers in the manner pointed out by law is not beneath the dignity of the common law, nor beneath its power to punish. The one is an annoyance to a small portion of the body politic ; the other shakes the social fabric to its foundations."

We call attention to the fact that these cases were tried together and argued together in the Superior Court, and, therefore, this opinion disposes of them both.

We are of opinion that the appellants were properly convicted in manner and form as they stood indicted in both of the indictments.

In regard to the assignments of error based upon quotations from the charge of the learned judge below, we consider them without merit. It is true the learned judge expressed his opinion quite plainly to the jury, but this he had a right to do so long as he fairly left the questions of fact to be passed upon by the jury.

The charge taken as a whole is not open to just criticism.

The assignments of error are all overruled and the judgment and sentence of the court in each case is affirmed, and it is ordered that the records be remitted to the court below to the end that the sentences may be executed.