## Commonwealth v. Houck

*B. L. Haag*, district attorney, for Commonwealth.

*William Hollis* and *Samuel H. Jubelirer*, for defendant.

HIPPLE, P. J., January 26, 1942.—On October 27, 1941, at a regular term of the Court of Quarter Sessions of Clinton County, an indictment was returned

a true bill by the grand jury, empaneled and sworn for that term, charging defendant in the first count with simple assault and battery and in the second count with aggravated assault and battery upon the person of Ruth Andrews.

The indictment was based upon a transcript of proceedings before T. Mark Brungard, an alderman elected in the first ward of the City of Lock Haven, Clinton County, Pa. The information made before the alderman charged defendant with the offense of aggravated assault and battery as defined in section 709 of The Penal Code of June 24, 1939, P. L. 872. Upon this information a warrant was issued by the alderman. Defendant was arrested on September 8, 1941, and brought before the alderman for a hearing. He was represented by counsel, the information was read to him, he waived a preliminary hearing before the alderman, and was committed to the Clinton County Jail, not having entered into any recognizance for his appearance at the following term of court. The alderman made due return of the proceedings before him to the Court of Quarter Sessions of Clinton County, a transcript thereof being filed September 10, 1941.

On October 29, 1941, defendant was called for trial at the regular October term, and on that date he entered a plea of "not guilty" on the indictment, signing the same in the presence of his counsel. Upon the motion and at the request of defendant's counsel the jurors were separately examined on their voir dire. A jury was selected in this manner and duly sworn, whereupon the trial of the case proceeded, evidence being introduced in behalf of the Commonwealth and of defendant. The trial consumed approximately two days, the jury being charged by the court on October 31, 1941, returning with a verdict finding defendant guilty as charged in the indictment. At the request of counsel for defendant that the jury be polled, the court directed the clerk of the court of quarter sessions to poll the

jurors individually, which was done, and in answer to the question "what is your verdict, guilty or not guilty?" each juror replied "Guilty".

On November 1, 1941, in open court, one of the counsel for defendant, who resided in a city other than Lock Haven, moved the court to permit motions for a new trial and arrest of judgment to be filed not later than November 7, 1941, which motion was granted by the court, and on November 7, 1941, a motion for a new trial was filed alleging: (1) The verdict of the jury was contrary to the law; (2) the verdict of the jury was contrary to the evidence; (3) the court erred in failing to sustain the demurrer of defendant to the evidence of the Commonwealth at the conclusion of the Commonwealth's case, on the count or charge of aggravated assault and battery; (4) the court erred in failing to direct the jury to find defendant not guilty of the charge of aggravated assault and battery; (5) the court erred in refusing defendant's point for binding instructions at the conclusion of the case requesting the court to direct the jury to find defendant not guilty of the charge of aggravated assault and battery.

On November 7, 1941, a motion in arrest of judgment was filed. The first three reasons set forth therein go to the conviction of defendant on the charge of aggravated assault and battery, defendant alleging that the evidence was not sufficient to sustain such conviction.

The fourth reason is as follows:

"IV. That the indictment is based upon an information issued by T. Mark Brungard, an alderman in and for the first ward of the City of Lock Haven, Clinton County, Pa., the issuance of a warrant by the said alderman for the arrest of defendant, the waiving of a hearing by the said defendant, before said alderman, the said defendant having been bound over for trial by said alderman, all of which acts were done and performed by said alderman without legal power and au-

thority and which acts were, therefore, null and void, said alderman having no jurisdiction over such alleged offenses committed or over the person of defendant, for the following reasons:

"(*a*) At the election held in the month of November, 1935, said T. Mark Brungard was elected by the electors of the first ward of the City of Lock Haven, Clinton County, Pa., as an alderman in and for the first ward of said city; said city being a city of the third class, as defined by the laws governing municipal corporations in the Commonwealth of Pennsylvania.

"(*b*) In pursuance of said election a commission, dated December 17, 1935, and recorded in the Office of the Recorder of Deeds in and for Clinton County, December 26, 1935, in Miscellaneous Docket No. 13, page 361, was issued by the Governor of Pennsylvania to the said T. Mark Brungard, commissioning said T. Mark Brungard to be an alderman in and for the first ward of said City of Lock Haven, Clinton County, Pa., for a period of six (6) years from the first Monday of January, A. D. 1936.

"(*c*) Said T. Mark Brungard has never to this date opened an office or performed any of the duties incident to the office of alderman in the first ward of the City of Lock Haven, Clinton County, Pa., but on the contrary, on or about January 6, 1930, when first elected, opened an office at no. 216 East Water Street, in the second ward of the City of Lock Haven, Clinton County, Pa., and ever since has there maintained his office as such alderman, and has performed all his official and judicial duties as such alderman at said office.

"(*d*) At this office, viz, no. 216 East Water Street, in the second ward of the City of Lock Haven, Clinton County, Pa., he issued all process and conducted all matters pertaining to the arrest, prosecution, and binding over of defendant in the above-stated case, viz, the issuance on September 6, 1941, of a warrant for the arrest of defendant, the binding over of defendant to

the Court of Quarter Sessions of Clinton County to the above number and term to answer the charges upon which this indictment is founded.

"(e) The office of the said alderman being in the second ward of the City of Lock Haven, and none of said process or proceedings being issued or taken in the first ward of the said city, but all thereof being taken, and all matters and things done in the second ward of said city, the same were performed beyond, and without the district in which said alderman was elected and commissioned by the Governor to act as alderman."

And the fifth reason alleges that no judgment against defendant could be lawfully rendered on the record of the case.

The questions for decision therefore are: (1) Has an alderman elected in one ward of the City of Lock Haven any authority to have an office in another ward of the city, issue process therefrom, hold hearings, and bind defendants over for trial, or is such alderman required to have his office in the district in which he was elected; (2) if the alderman had no authority to issue process in a ward other than that in which he was elected, did defendant waive that defect by voluntarily submitting his person to the jurisdiction of the Court of Quarter Sessions of Clinton County because he entered a plea of not guilty upon the indictment and proceeded to a trial upon the merits without either making a motion to quash the indictment because of lack of jurisdiction in the alderman or suing out a writ of habeas corpus to test the jurisdiction of the alderman; and (3) is the evidence sufficient to sustain a conviction on the charge of aggravated assault and battery?

1. We will consider first the jurisdictional question. Lock Haven was incorporated as a city by a special act of assembly, viz, the Act of March 28, 1870, P. L. 619. Section 20 of this act provided that the justices of the peace holding office within the limits of the city should

be designated as aldermen, and whenever a vacancy occurred in the office of such justice of the peace an election for alderman should be held in the ward where such justice of the peace resided. This section contained this important provision:

*"Provided,* That each ward shall be entitled to have one alderman after the present commissions expire: *And provided also,* That the said justices of the peace and aldermen shall be allowed to have their offices at any place within the limits of said city where they may select."

Under this provision the aldermen elected in each ward of the city had their offices at whatever place in the city they might select, and practically all of them had their offices in the second ward of the city, that being the ward in which the court house is situated, and their offices being located within a square or more of the court house and the offices of the various attorneys.

The Act of June 27, 1913, P. L. 568, popularly known as "The Clark Act", provides for the incorporation, regulation and government of cities of the third class which are defined in article XXI, sec. 1, par. 3, as including, inter alia, any city of less population than 10,000 inhabitants incorporated prior to the Act of May 23, 1874, P. L. 230, after the date of the acceptance of the provisions of the Act of May 23, 1874, in the manner prescribed in section 57 thereof.

By an ordinance duly passed by the Council of the City of Lock Haven, July 7, 1913, and approved by the mayor of said city July 8, 1913, reciting that it was desirous of accepting the provisions of the Act of May 23, 1874, P. L. 230, according to section 57 thereof, and the supplements thereto, it was enacted that the provisions of the Act of 1874 and the supplements thereto were accepted by the City of Lock Haven so that said city should be subject to and governed by the laws providing for the incorporation, regulation, and government of cities of the third class.

A duly-certified copy of this ordinance having been filed in the office of the Secretary of the Commonwealth on August 22, 1913, a certificate was thereupon issued by the Governor of Pennsylvania certifying a surrender of the former charter of said city, and the acceptance by the city of the provisions of the Act of May 23, 1874, whereupon the City of Lock Haven became a city of the third class and subject to all the provisions of the acts of assembly relating thereto.

T. Mark Brungard was elected an alderman from the first ward of the City of Lock Haven at the municipal election held in November 1935, was duly commissioned and entered upon the duties of this office on the first Monday of January, 1936, for a term of six years. Since that time he has maintained an office at 216 East Water Street in the second ward of the City of Lock Haven, and it was at this office that the information in this case was made, the warrant isued, defendant brought for a preliminary hearing, the hearing waived by defendant, and defendant committed to the county jail, not having filed a recognizance for his appearance at the October sessions, 1941.

The first question therefore goes to the jurisdiction of the alderman to issue process, hold hearings, and commit defendants to the county jail at an office or place located other than in the ward from which he was elected. There is no dispute as to the facts. The proceedings before the alderman were not in the first ward of the City of Lock Haven.

Notwithstanding the provisions of the Act of June 21, 1839, P. L. 376, sec. 13, 42 PS §172, requiring aldermen, during their continuance in office, to respectively keep their offices in the ward for which they shall have been elected, and the acceptance by the City of Lock Haven of the provisions of the Act of May 23, 1874, P. L. 230, the Commonwealth contends that the right given to the aldermen of the City of Lock Haven under the Act of March 28, 1870, P. L. 619, to hold

their offices at any place in the city they might select should be considered a vested right which was preserved to the aldermen by the latter portion of section 57 of the Act of May 23, 1874, P. L. 230, providing that . . . "all of the elected officers therein [in a city of less than 10,000 population theretofore incorporated] shall hold their respective offices until the expiration of the term for which they were respectively elected, and shall have all the rights and powers which belong by law to them respectively, under the laws in existence at the date of the surrender as aforesaid; . . ."; and that this vested right was further recognized by the Act of May 23, 1889, P. L. 277, relating to the incorporation and government of cities of the third class, which in article XIX, sec. 2, repeals all acts or parts of acts inconsistent therewith, but provides that "no right or interest which has become vested thereunder [that is, under any acts which are repealed] shall be destroyed or impaired by the operation of this act, or by the exercise of any power granted therein"; and also by article XXI of the Act of June 27, 1913, P. L. 568, known as "The Clark Act", providing that "All acts of Assembly or parts of acts relating to cities of the third class, not inconsistent with the provisions of this act, shall be and remain in full force; . . ."

If the right given to the aldermen of the City of Lock Haven by section 20 of the Act of March 28, 1870, could be held to be a vested right in the aldermen personally, there might be some reason to construe the Acts of 1874, 1889, and 1913 as not divesting the aldermen of that privilege. However, we do not now decide this question, deeming such decision unnecessary because of the determination of the other jurisdictional question involved herein. It might be said, however, that if the question of the jurisdiction of the alderman in the instant case had been raised by defendant in limine by suing out a writ of habeas corpus,

or by a motion to quash the indictment, before pleading to the same, such question would merit serious consideration.

2. There is a clear distinction between jurisdiction of the subject matter by a court and jurisdiction of the person. Lack of jurisdiction of the subject matter cannot be waived by a defendant and objection thereto may be made at any stage of the proceedings. If, however, the court has jurisdiction of the subject matter, a defendant may and does waive jurisdiction of his person by voluntarily pleading to an indictment and proceeding to trial upon the merits. Jurisdiction of the person of defendant is thus obtained by consent and waiver.

The general rule is stated in 22 C. J. S. §162, as follows:

"A plea of guilty or not guilty waives objections to the jurisdiction of the person, but not to the jurisdiction of the offense or subject matter.

"The objection that the court has no jurisdiction of the person of accused, whether by reason of some irregularity in the proceedings, or because of some defect in the constitution of the court which does not prevent it from being a de facto court, or for other reasons, is waived by accused pleading not guilty and going to trial, or by pleading guilty, unless accused is properly permitted to withdraw his plea. However, the objection that the court does not have jurisdiction of the offense or subject matter is not waived by a plea or going to trial, and may be asserted at any time."

In section 147 it is stated that "Consent of the accused will not confer jurisdiction on a court not having jurisdiction of the offense. It is otherwise as to jurisdiction of the person. . . .

"Where, however, a court has jurisdiction of the subject matter, jurisdiction of the person of accused may be conferred by consent or waiver. . . .

"Jurisdiction to try an offender for a crime of which the court has jurisdiction is obtained by his appearance in court and participation in the trial. . . .

"By pleading guilty or not guilty to an accusation of a crime of which the court has jurisdiction, jurisdiction of the person is conferred on such court; but this is not so as to an offense of which the court has no jurisdiction."

And again in section 161 it is stated that "There can be no waiver of jurisdiction of the offense or subject matter; but this is not so as to jurisdiction of the person.

"In considering objections to the jurisdiction of the court in criminal prosecutions, a distinction is to be made between those which involve jurisdiction or fundamental rights of accused and those which involve mere personal privileges of accused. The former cannot be waived, but the latter can. . . .

"On the other hand, where the court has general jurisdiction of the subject matter, lack of jurisdiction of the particular case may be waived by failure to take timely objection thereto, or an invocation of, or submission to, the jurisdiction may raise an estoppel to deny the same. . . .

"Where a court has jurisdiction of the offense or subject matter, the objection that it has no jurisdiction of the person of accused may be waived. One who desires to object to the jurisdiction of the court over his person must appear in court for that purpose only, and if he raises other questions he waives the objection. Such objection must be timely made, and is waived when accused fails to raise the same by timely and proper plea, or where he appears generally and *submits to arraignment without objection.* Similarly jurisdiction of the person is waived when accused submits to the jurisdiction of the court by . . . pleading guilty or not guilty, . . . or going to trial on the merits, even if under protest. . . .

"One accused of a crime, who fails to make timely objections to irregularities in preliminary matters or procedure, waives such objection."

In 14 Am. Jur. 917, §214, the rule is also stated to be that jurisdiction of the subject matter is derived from the law, can never be acquired solely by consent of the accused, and objection that the court has no jurisdiction of the subject matter may be made at any stage of the proceeding, the right to make such objection being never waived, but that "Everywhere jurisdiction of the person of the defendant may be acquired by consent of the accused or by waiver of objections. If he fails to make his objection in time, he will be deemed to have waived it. Such an objection is waived by pleading not guilty and going to trial."

We have had the benefit of a very carefully prepared brief by defendant's counsel, but defendant has failed to distinguish between lack of jurisdiction in the court, which cannot be waived, and lack of jurisdiction over the person, which can be waived. Defendant contends that, notwithstanding the entry of a plea of "not guilty" by him and his going to trial upon the merits, the entry of such plea, the conduct of the trial, and the verdict rendered by the jury are void, because of lack of jurisdiction in the alderman regarding the preliminary proceedings. With this position we cannot agree. The Court of Quarter Sessions of Clinton County has jurisdiction of the offense charged in the indictment. Therefore, we hold that jurisdiction over the person of defendant was obtained by consent and waiver and defendant is now estopped from questioning or denying the same. Even if defendant had not been arrested, or had no preliminary hearing before a committing magistrate, nevertheless if he voluntarily submitted himself to the jurisdiction of the court, entered a plea and went to trial upon the merits, the court would thereby acquire jurisdiction of his person.

The cases cited by defendant do not upon examination sustain his position. On the contrary they hold that jurisdiction of the person may be waived notwithstanding irregularities in the preliminary proceedings. Thus in Commonwealth v. Schoen, 25 Pa. Superior Ct. 211, defendants questioned the validity of the informations and warrants upon which they were arrested and brought before the committing magistrate because of certain alleged irregularities therein. No motion was made to quash the bills of indictment, nor were the bills demurred to, nor was a motion made in arrest of judgment. The Superior Court, in affirming the conviction of defendants, held:

"We are of opinion that it is entirely too late to raise any such question after indictment found and a conviction had. Where an indictment is regularly found by the grand jury and the defendants plead thereto and go to trial on the merits all defects and irregularities in the information, warrant and proceedings before the magistrate must be held as cured. We think this question is ruled by Commonwealth v. Brennan, 193 Pa. 567, where the information charging the defendant with murder was not signed by the prosecutors. In that case the opinion of the Supreme Court is brief and is as follows: 'The defendant was tried upon an indictment found regularly by the grand jury upon examination made before a magistrate. A trial was had upon the merits and the defendant was duly convicted of murder of the first degree. On the trial a motion was made to quash the indictment because it was not found after an information sworn to and subscribed before the committing magistrate. While the defendant might have been heard on that subject upon a proceeding to be discharged from custody on the ground of an illegal commitment, it is certainly too late after indictment found upon the trial of the cause. The final indictment cannot be invalidated for any such reason.' . . .

"Other authorities might be cited upon this question, but we deem it unnecessary as the law is too well settled in Pennsylvania that an indictment regularly found and pleaded to, followed by a trial upon the merits, cures all defects in the preliminary proceedings."

In Commonwealth v. Lingle, 120 Pa. Superior Ct. 434, 436, defendant was indicted for statutory rape, pled guilty, went to trial, and the jury disagreed. When the case was called again for trial a motion was made to quash the indictment because the information on which it was founded failed to state that the offense had been committed in Lebanon County. This motion was refused and in affirming the Superior Court held that "The action of the court below was right. By his plea and going to trial defendant waived any defects of form in the indictment or *the proceedings prior to the indictment . . .*" (italics supplied), citing Commonwealth v. Schoen, 25 Pa. Superior Ct. 211.

The Superior Court further held that ". . . the salutary and sensible rule there established [referring to the Act of March 31, 1860, P. L. 427, relating to amendment of indictments] has been applied with equal force to defects in the proceedings prior to indictment, which should be raised by motion to discharge before indictment found: . . .", citing Commonwealth v. Brennan, 193 Pa. 567, Commonwealth v. Keegan (No. 1), 70 Pa. Superior Ct. 436, and Commonwealth v. Dingman, 26 Pa. Superior Ct. 615.

In York City v. Hatterer, 48 Pa. Superior Ct. 216, 226, involving the right of a policeman of a municipality to make an arrest without a warrant or summons for the violation of an ordinance, and in which the constitutionality of the Act of May 16, 1901, P. L. 224, sec. 21, providing that a policeman of a municipality might make such arrest, was questioned, the Superior Court refused to pass upon the constitutional question, holding that "The defendant might have raised any

question touching the legality of her arrest upon a proceeding to be discharged from custody, but having voluntarily come into the court below and presented her petition for the allowance of an appeal, she is not now in position to raise such questions. . . ."

In Commonwealth v. Wimmer, 10 D. & C. 720, in which defendants were indicted for burglary, entered a plea of "not guilty", and a trial followed which resulted in a verdict of guilty, it was established during the trial of the case that the committing alderman held the preliminary hearing at a place outside of his jurisdiction. Upon that circumstance defendants based a motion for discharge at the conclusion of the Commonwealth's case, which was overruled, whereupon a motion in arrest of judgment was filed. The motion in arrest of judgment was overruled and discharged. President Judge Reno, of Lehigh County, now Attorney General of the Commonwealth, held that "If defendants had moved to quash the indictment upon the ground that the proceedings before the alderman were irregular, there is respectable authority for sustaining the motion: Com. v. Kurz, 14 Dist. R. 741. Certainly, they would have been released in a *habeas corpus* proceeding: Com. v. Brennan, 193 Pa. 567. But having entered a plea and gone to trial upon the merits, all defects in the information, warrant and proceedings before the committing alderman were cured: Com. v. Schoen, 25 Pa. Superior Ct. 211."

In March v. Commonwealth, 21 W. N. C. 566, 568, which was an indictment for perjury and in which the authority of the president judge of the court of quarter sessions to sit as a committing magistrate was questioned, the Supreme Court, in holding that such power existed and that the propriety of its exercise was a question which a judge must determine in view of all the circumstances, further stated:

"If a justice of the peace returns a transcript of his proceedings in a criminal case that is defective in form,

the defect is taken advantage of on motion for the discharge of the defendant or to quash the commitment; but after an indictment has been found, the defendant has pleaded to it, and a verdict rendered by the jury, it is too late to object to the form of the commitment or *the proceedings before the justice.* Precisely the same thing is true of a commitment ordered by a Judge. Objections relating to matters of form must be raised at the proper time, or they will be regarded as waived. After plea and trial we can no more look into this commitment than if it had been made by a justice of the peace." See also Commonwealth v. Weiner, 67 Pa. Superior Ct. 558, 565, and Commonwealth v. McMahon, 14 Pa. Superior Ct. 621, in which the Superior Court refused to reverse on a doubtful question of jurisdiction where no rights of the prisoner had been infringed, and where the case had been fully and fairly determined by the court below without objection being raised by defendant to the jurisdiction.

Defendant's counsel calls the attention of the court to the cases of Commonwealth v. Bonner, no. 30, April sessions, 1925, and Commonwealth v. Draucker et al., no. 28, April sessions, 1925, in the Court of Quarter Sessions of Clinton County, in which the writer of this opinion appeared as attorney for these defendants. In each of these cases a motion to quash the indictment was made before a plea was entered thereon, or a jury empaneled. The motion to quash alleged that the committing alderman was without jurisdiction in that he had his office and the proceedings were held before him in a ward other than that in which he was elected. In each case the motion was sustained, and the indictment was quashed by President Judge D. U. Arird, of Warren County, specially presiding. This situation is very different from the case at bar. Counsel in those cases did not permit defendants to enter a plea of guilty, but raised the jurisdictional question in limine by a motion to quash, whereas in the case we are now considering

not only was no motion to quash made, but a plea of "not guilty" was entered, the case was actually tried upon its merits, and a verdict returned.

The case of Commonwealth v. Kurz et al., 14 Dist. R. 741, is not controlling because the question as to the jurisdiction of the committing alderman or magistrate was raised by a motion to quash the bills of indictment.

Defendant has raised no question as to the conduct of the trial, upon the ruling of the court or admission of evidence, nor has he taken any exceptions, except a general one, to the charge of the court. Defendant voluntarily submitted his case to the jury in the hope of securing an acquittal, and he has not in any degree been prejudiced. No right or substantial interest of defendant has been infringed, and the verdict should not be set aside, or a new trial granted in a case such as this, the trial of which was fully and fairly conducted.

3. At the close of the Commonwealth's case defendant filed a demurrer to the evidence of the Commonwealth, insofar as it related to the second count in the indictment charging aggravated assault and battery, because the evidence did not sustain or warrant a conviction on the count. The demurrer was overruled. At the close of the entire case defendant presented a written point requesting the court to direct the jury to return a verdict of "not guilty" on the count charging aggravated assault and battery. This point was refused.

Upon further consideration we conclude that the court erred in not directing the jury to return a verdict of "not guilty" on the count charging aggravated assault and battery. The second count in the indictment is framed under section 709 of The Penal Code of June 24, 1939, P. L. 872. That section defines aggravated assault and battery as follows:

"Whoever unlawfully and maliciously inflicts upon another person, either with or without any weapon or instrument, any grievous bodily harm, or unlawfully

cuts, stabs or wounds any other person, is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine not exceeding two thousand dollars ($2,000), or undergo imprisonment, either at labor by separate or solitary confinement or to simple imprisonment, not exceeding three (3) years, or both."

The indictment charges that defendant "in and upon one, Ruth Andrews, did make an assault and then and there unlawfully and maliciously did inflict grievous bodily harm on the said Ruth Andrews by striking the said Ruth Andrews upon the head with a stick of wood, contrary, &c."

Section 709 of The Penal Code seems to embrace two kinds of injuries constituting the offense of aggravated assault and battery, the clauses and paragraphs thereof being in the disjunctive, viz: (*a*) Where grievous bodily harm is unlawfully and maliciously inflicted either with or without any weapon or instrument; and (*b*) where a person unlawfully cuts, stabs or wounds another, which implies the use of a weapon at least as to a cutting and stabbing. The count of the indictment in question is based upon the first paragraph, alleging that defendant inflicted grievous bodily harm upon Miss Andrews.

Miss Andrews testified that as she was approaching the place of her residence she discovered defendant behind her and close to her right side; that he had his hand raised and was holding something which looked like a club about one foot in length; that defendant struck her with this instrument on the left forehead near the hair line, and as a result thereof she had a bruise or lump on the left side of her forehead which did not, however, require the services of a physician; the injury was further described as a lump or bruise the size of a half dollar and the skin was not broken. Miss Andrews was not struck forcibly enough to be felled, and the injury was not so severe as to occasion any loss of work on her part.

The lump or bruise occasioned by the attack upon Miss Andrews cannot be considered a wound contemplated in section 709 of The Penal Code.

The word "wound" is defined in Webster's New International Dictionary as "an injury to the body of a person . . . one caused by violence, by which the continuity of the covering, as skin, mucous membrane or conjunctiva is broken," and in 45 Words & Phrases 548, citing cases from other jurisdictions, the word is defined as an injury breaking or cutting the skin.

There was no breaking of the skin either internally or externally on the bruise or lump raised on Miss Andrews' forehead and therefore the injury could not be called a wound within the meaning of the section of The Penal Code under consideration.

In construing section 98 of the Criminal Code of March 31, 1860, P. L. 382, PS §18, 2112, of which section 709 of The Penal Code is a reënactment, the Superior Court in Commonwealth v. Holgate, 75 Pa. Superior Ct. 471, 476, stated:

"A scratched face or a black eye are perhaps usual incidents of an ordinary assault and battery and are not regarded as serious. The section supporting the second count was evidently intended to cover a more severe injury than is usually observed as a result of a simple assault and battery. The word grievous was used in the sense of atrocious, aggravated, heinous, and relates to what might be considered distressing injuries. The immediate context of the second section prohibiting unlawful cutting, stabbing or wounding, sheds light on the character of the bodily harm referred to; as does also the severe penalty imposed in comparison with that which attends simple assault and battery."

The injuries sustained by Miss Andrews as shown by the testimony cannot be considered atrocious, aggravated, or heinous. There is nothing in the testimony to indicate whether the stick used by defendant was a dangerous instrument, nor how thick or heavy it was,

and, inasmuch as the second count in the indictment does not allege an unlawful wounding, the conviction thereunder can be sustained only if the injuries received by Miss Andrews were held to be "grievous bodily harm". In our opinion the injury as described in the testimony was not such as to constitute grievous bodily harm within the meaning of section 709 of The Penal Code, and therefore the jury should have been instructed to return a verdict of "not guilty" upon that count. We, therefore, sustain the motion in arrest of judgment for the first, second, and third reasons set forth therein.

### Decree

And now, January 26, 1942, the motion for new trial and the motion in arrest of judgment based upon the fourth and fifth reasons set forth therein are refused.

The verdict of the jury finding defendant guilty upon the second count in the indictment is hereby arrested and set aside.