## Commonwealth *v.* Holgate, Appellant.

*Criminal law—Aggravated assault and battery—Evidence—Sufficiency.*

In a prosecution for aggravated assault and battery, the case is for the jury and a verdict of guilty will be sustained, where there was evidence that the defendant assaulted the prosecutor and struck him on the head with a lump of coal, with the result that the latter was confined to his house for four days and required the attendance of a surgeon.

Argued October 18, 1920. Appeal, No. 19, March T., 1921, by defendant, from judgment and sentence of Q. S. Lackawanna County, April Sessions, 1920, No. 12, on verdict of guilty in case of Commonwealth of Pennsylvania v. Lynn H. Holgate. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for assault and battery, aggravated assault and battery, and felonious wounding.    Before MAXEY, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on second count as charged in the indictment on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and the charge of the court.

*R. H. Holgate,* and with him *W. R. Lewis,* for appellant.

*Frank P. Benjamin,* District Attorney, and with him *John M. Harris,* Assistant District Attorney, and *Joseph O'Brien,* for appellee.

OPINION BY HENDERSON, J., March 5, 1921:

The defendant was convicted of unlawfully and maliciously inflicting grievous bodily harm on one, George Paterson, in violation of the 98th section of the Crimes Act of March 31, 1860. The evidence of the Commonwealth was in substance that the defendant assaulted Paterson and injured him by striking him on the head with a lump of coal which he held in his hand; as a result of which Paterson was confined to his house for four days and required the attendance of a surgeon who dressed his injuries and bandaged his head. There was a cut on the forehead and a bruise or abrasion on the side of his face. There was evidence that he was confined to his bed during a part of the time, and that he sustained other injuries. The assault alleged took place on a public road near the home of each of the parties, between ten and eleven o'clock at night. Paterson was returning to his home from the house of a neighbor where he had spent the evening, and the defendant came

up behind him, as alleged by the Commonwealth, and struck him two or three times, when the men clinched and fell.  Paterson called to the neighbor whose house he had just left, and the latter hearing the call came out and found Paterson and the defendant on the ground, Paterson holding the latter down.  On the arrival of the neighbor, Gumær, Paterson released his hold and got up and the defendant went away in the direction of his home.  The defendant admitted that he and Paterson had a struggle, but alleged that Paterson was the aggressor.  The case turned largely, therefore, on the credibility of the witnesses as affected by corroborating evidence as to the extent of Paterson's injuries and some contradiction of the defendant with respect to evidence of violence on his face which he said was the result of Paterson's assault.  The evidence was thus within a narrow compass, with few witnesses, in regard to an occurrence not complex.  Twenty-one assignments of error are presented for our consideration; many of them are not set forth as required by the rules of court and might be ignored.  We have examined them all with care, however, for the purpose of ascertaining whether the defendant has suffered by reason of any error of the court in the admission of evidence, or in the charge to the jury.  A number of the assignments relate to matters of little or no consequence, and which could have no improper influence on the result of the case.  In the first assignment, the prosecuting witness was asked how long he was laid up with the cuts and violence.  This was objected to and the form of the question changed to an inquiry how long were you laid up from the injuries? That was also objected to and the objection overruled. Soon after the occurrence a photograph was taken of the place where the encounter took place.  The locality was familiar to the prosecuting witness—he lived within a very short distance of the place.  He was asked whether the photographs represented the appearance of the locality there.  Objection was made to his competency to

testify on that subject. This is made the subject of the second assignment of error. It was proposed on cross-examination to inquire of the prosecuting witness whether he had not appointed the defendant deputy constable many years before. This was objected to and the action of the court is made the subject of the third assignment. During the progress of cross-examination of the witness, it was developed that he had not spoken to the defendant since the trial of a man named Howe some years before. Counsel for the defendant then sought to inquire whether it happened that the father of the defendant was counsel in the Howe case. This was objected to by the Commonwealth and the objection sustained. The ruling is made the subject of the fourth assignment. When the witness, Gumær, was on cross-examination he was asked whether he was prepared to swear that the defendant had a piece of coal in his hand at any time after he came to the scene of the fighting. The court interposed by the remark, "he didn't say so." Objection was then made to the question. The court understanding the evidence to be that the witness did not know whether he had a lump of coal in his hand or not, sustained the objection. This is the subject of the fifth assignment of error. Later in the examination of Gumær, he was asked whether there was anything in the appearance of Paterson to indicate that he was hurt in any way. The witness replied that he had no way of knowing. He was then asked whether so far as he knew he was injured to any extent. The court sustained an objection to this inquiry and this is the complaint set forth in the sixth assignment. Dr. Fitch took care of Paterson. He was asked on cross-examination whether he would say that the injuries which he saw and described would amount to grievous bodily harm. The court held that that was not a question for an expert. Of this the appellant complains in the seventh assignment. No discussion is necessary to show the propriety of the court's action in the respects complained of.

Lydia Gumær and Mrs. Wilson were in the house of the witness, Peter Gumær, at the time Paterson called Mr. Gumær. His call was, "Peter, Peter." The witnesses were asked in what tone of voice he called; to which they replied "as though he was in distress." The ninth and tenth assignments cover this feature of the case. It is a well-known principle that a witness may describe a sound as faint, loud, etc., or may state the direction from which it appeared to come, or state the cause of it, and the emotions or condition of mind from which the witness infers it arose. So also he may describe the sound as resembling some other sound. The identification of the voice as expressed over the telephone is a frequent occurrence. Quality of the voice is indicative of the person: 17th Cyclopedia of Law, 185. In Commonwealth v. Brown, 76 Pa. 319, which was a prosecution for murder, the Commonwealth was permitted to prove a confession made to a fellow prisoner through a soil pipe in the prison and not in the presence of the witness. The identification was by the tone of voice—the resemblance of the sound to the voice of the defendant as recognized by the witness. It is well known that the voice may disclose emotions as distinctly as the eye or the face. The court was not in error therefore in permitting the witnesses to describe the quality of the tone of voice. Complaint is made that during the progress of the trial the court refused the motion of the defendant's counsel "that the second count be withdrawn." This action of the court was proper. The count was a part of the indictment and a record of the court. If the counsel thought the evidence was insufficient to support it, the proper practice would have been to ask the court to instruct the jury that the evidence would not sustain a conviction on that count. However, the court could not have said with propriety that there was no evidence to sustain the count. The extent of the injuries under the testimony was a subject for the consideration of the jury. The assignments from the twelfth to the eight-

eenth relate to excerpts from the charge of the court. The indictment contained a count for an assault with intent to kill. At the threshold of the charge the court said to the jury that because of the fact that the weapon used is not one that the law ordinarily regards as a deadly weapon, the court thought it proper to give the defendant the benefit of the doubt in regard to that, and instructed them that they had nothing to do with the charge of assault with intent to kill. It is urged that this was a "definite, unqualified and positive instruction to the jury, by the court, that one basic, controlling fact in the case, to wit: that a weapon was used by the defendant, had been established by the evidence and recorded by the court; that there was no room for questioning the existence of this fact," but we think the jury could have received no such impression from the charge. The obvious intention was to refer to the weapon as alleged to have been used. At a later point in the charge the court referred to the claim of the prosecuting witness that the defendant had something hard in his hand which he thought at that time was a rock. It was an explanation of the action of the court in instructing the jury not to consider the first count because a deadly weapon was not shown to have been used. The thirteenth assignment does not contain a correct quotation from the charge if the latter is correctly printed. That portion of the charge is perhaps open to criticism in the illustration which it gives as to what would constitute grievous bodily harm. A blacked eye or a cut lip might or might not be indicative of the kind of assault and battery covered by the second count. The section under which the count was drawn was intended to cover a more serious class of batteries than that legislated against in the preceding section. A scratched face or a black eye are perhaps usual incidents of an ordinary assault and battery and are not regarded as serious. The section supporting the second count was evidently intended to cover a more severe injury than is usually observed as a re-

sult of a simple assault and battery. The word grievous was used in the sense of atrocious, aggravated, heinous, and relates to what might be considered distressing injuries. The immediate context in the second section prohibiting unlawful cutting, stabbing or wounding, sheds light on the character of the bodily harm referred to; as does also the severe penalty imposed in comparison with that which attends simple assault and battery. While we are not able to approve of the illustrations used by the learned trial judge, we are of the opinion they did the defendant no harm. The evidence as has already been indicated was such as permitted the jury to find a verdict on the second count and inasmuch as the sentence imposed on the defendant is much less than might have been inflicted for a simple assault and battery, it is evident that he fared no worse than if the conviction had been had on the third count. None of the other assignments require attention. The complaint that the charge is inadequate and misleading, we cannot sustain. The case seems to have been submitted in a manner which gave the jury entire freedom to render a verdict as the evidence seemed to require. The court said: "It is not our function to intimate what we think; we have nothing to do with the moulding of your verdict, except as to submit to you the principles of law by which you should be guided in reaching a verdict, and you should not receive the impression from what the court has said that we think the defendant should be found guilty or that we think he should be found not guilty, we leave that question entirely to you." At the conclusion, the judge inquired: "Have I omitted anything, gentlemen?" To which inquiry there was no response. After a careful review of all of the evidence we are of the opinion that there is not substantial ground for a complaint that the defendant did not have a fair trial.

It should not be overlooked that the assignments to the charge of the court are not in accordance with the requirements of the statute. They are all taken under

a general exception to the charge without any reason being "alleged regarding the same in the hearing of the court." The second section of the Act of May 11, 1911, P. L. 279, provides that "exception may be taken without allowance by the trial judge to any part or all of the charge or to the answers to points, for any reason that may be alleged regarding the same in the hearing of the court, before the jury retires to consider its verdict, or thereafter by leave of the court." It will be seen that when exceptions are taken the reasons must be alleged in the hearing of the court. The practice in such cases is discussed in Sikorski v. Phila. Ry. Co., 260 Pa. 243. See also Chamberæti v. Susquehanna Coal Co., 262 Pa. 261. The earnestness with which the learned counsel for the defendant pressed the appeal has led us to carefully consider each of his complaints, but we do not find reversible error in the record. The judgment is affirmed and the record remitted to the court below. And it is ordered that the defendant appear in that court at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.