## Wilson Appeal.

Argued January 20, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

Lois G. Forer, with her Daniel H. Shertzer, for appellant.

James F. Heinly, Assistant District Attorney, with him Clarence C. Newcomer, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 28, 1970:

Late in the afternoon of June 2, 1968, Charles Laverne Wilson and several other youths became in-

volved in an inter-racial street fight in Lancaster, Pennsylvania. No one was seriously injured in the course of the affray, and Wilson's participation was apparently confined to having thrown a few punches. Juvenile delinquency proceedings, however, were brought against Wilson as a result of the incident.

Wilson's case came on for a hearing at 9:30 a.m. on July 24, 1968. His counsel, whom he met for the first time that morning, entered no plea in Wilson's behalf and agreed that Wilson had participated in the fight. After the testimony was taken the following colloquy occurred: "MR. HUMMER [defense counsel]: Your Honor, I would like to say one thing. I think it is obvious from his testimony that this is not one of the leaders in whatever this gang consisted of, or whatever occurred here, and I don't even believe he was one of the main perpetrators. I think he was perhaps along with them, and as his own testimony was, he admitted that he did participate in the fracas. THE COURT: Well, of course he has been in trouble before. In 1965 he was charged with burglary and placed on probation. You also have some trouble going to school, don't you? DEFENDANT: Yes, sir. THE COURT: Were you suspended from school also? You seem to be in need of some stricter discipline. Isn't that about right? DEFENDANT: I don't know. THE COURT: You don't know. Well, if you don't know, the court so finds from the testimony in this case and from your prior conduct. The court adjudges Charles Laverne Wilson a delinquent and commits him to the State Correctional Institution at Camp Hill, Pennsylvania. . . ."[1]

---

[1] ". . . the Juvenile Court based its commitment order on a limited inquiry which failed to present a complete and accurate picture of Wilson's needs. No testimony was solicited from Wilson or his mother, who was present throughout the hearing, as to his home life. Further, no psychiatric examination was ordered nor did any probation officer testify as to Wilson's background. In

Wilson's appeal to the Superior Court resulted in an opinionless per curiam affirmance, with Judge HOFFMAN and Judge SPAULDING dissenting in an opinion written by the former.[2] We granted allocatur.

Wilson argues that his adjudication of delinquency ought to be reversed for four reasons: (1) he was denied adequate and timely notice of the charges against him; (2) he received ineffective assistance of counsel; (3) his commitment for a period potentially longer than that which an adult charged with two counts of simple assault and battery could receive violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (4) the hearing judge abused his discretion.

## NOTICE

Wilson alleges that he was denied the right to "adequate and timely notice" mandated by *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428 (1967), wherein the Supreme Court said that Due Process ". . . does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet." 387 U.S. at 33-34, 87 S. Ct. at 1446-47. Of course, the juvenile need not have notice of every factor which might be relevant in his hearing; but he must have notice of those factors upon which the adjudication will be based and of any other consideration which may be used to justify im-

---

short, the commitment order rested solely upon the fact that Wilson had participated in a street fight and that he had a prior record which was before the court at the hearing." *Wilson Appeal*, 214 Pa. Superior Ct. 160, 169, 251 A. 2d 671, 675 (1969) (dissenting opinion).

[2] *Wilson Appeal*, 214 Pa. Superior Ct. 160, 251 A. 2d 671 (1969).

position of a sentence longer than the criminal maximum. It is quite clear that the hearing judge in this case drew no distinction between those issues which were relevant to the adjudication and those which were important only in determining the length of commitment. Rather, he obviously based the adjudication of delinquency on two previous incidents in which Wilson had been involved, a school suspension and a "burglary,"[3] as well as on the finding that he had participated in the street fight that led to the initiation of the proceedings. Neither Wilson, nor his parents, nor his counsel were alerted to the fact that these prior occurrences were going to be considered, and were therefore not prepared to either offer testimony or to argue the seriousness or relevance of these past events. In short, Wilson was not really given an opportunity to try several major aspects of his case.

The invidiousness of the procedure becomes obvious when one reads the dissenting opinion of Judge HOFFMAN who, unlike the hearing judge, had an opportunity to consider these events with the benefit of arguments from opposing counsel and with a greater leisure. He concluded that: "My own reading of Wilson's probation record, secured from the Juvenile Court of Lancaster County, however, negates the seriousness of this past conduct. The 'burglary' mentioned by the lower court refers to an incident which occurred when Wilson was 13 years old. At that time he broke a window in a public school, ran water in the school's toilet bowls and knocked a soap dispenser from the wall for a total damage of $8. He was placed on 14 months probation, and from the record, his conduct appears to have been satisfactory in that interval. Wilson was also expelled from school for a reason omitted from his record ... and ... he was accused of, but never prosecuted

---

[3] See the colloquy preceding note 1, supra.

for, using profane language in a diner." *Wilson Appeal,* 214 Pa. Superior Ct. 160, 169, 251 A. 2d 671, 676 (1969) (dissenting opinion).

From this summary of Wilson's record it is clear that the past conduct mentioned by the hearing judge was not of a serious nature, and that Wilson's inability to argue the importance of these factors probably contributed to the length of the commitment imposed.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Wilson's counsel did not meet his client until the morning of the hearing. He did not present to the court or argue a self-defense theory even though he was aware of evidence which tended to show that Wilson was "provoked" into striking the complaining witnesses. He made no objection to the trial court's references to Wilson's prior history. He made no final argument.

It is our view that the facts of this case raise a high probability of inadequate representation. However, the absence of any notice as to what the relevant issues were going to be and the other procedural errors make it difficult to see how counsel could have done much more than he did. Wilson was inadequately represented, but the inadequacy stemmed more from the court's failure to accord Wilson his *Gault* rights than from any inability of his counsel.

### EQUAL PROTECTION

Wilson's delinquency petition was based on two charges of simple assault and battery. Having been found delinquent as a result of that conduct he was committed to Camp Hill for an indefinite period of time not to extend beyond his twenty-first birthday. Since he was sixteen at the time the maximum possible

commitment was five years. Had Wilson been tried as an adult and been convicted of simple assault and battery his punishment would again probably have been commitment to Camp Hill,[4] but since the maximum sentence for one count of simple assault and battery is two years, he could have been given a maximum sentence of only four years.

Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution a state may make distinctions only upon the basis of reasonable classifications. If the Commonwealth wishes to make individuals guilty of similar conduct eligible for maximum sentences of varying lengths it must demonstrate that the distinctions which it makes are based on some relevant and reasonable classification. *Commonwealth v. Daniel*, 430 Pa. 642, 243 A. 2d 400 (1968).

It is our view that there can be no constitutionally valid distinction between a juvenile and an adult offender which justifies making one of them subject to a longer maximum commitment in the same institution for the same conduct.[5]

There can be circumstances under which a longer maximum commitment may be permissible, but only if three factors are present: (1) The juvenile must have notice at the outset of the proceedings of any and all factors upon which the state proposes to base the ad-

---

4 ". . . [J]uveniles sentenced to terms of imprisonment by Courts of Quarter Sessions are invariably committed to the State Correctional Institution at Camp Hill for a sentence not in excess of the maximum term specified by The Penal Code. For instance, as of this writing, there are only 19 juveniles who have been convicted of crimes in proceedings before Courts of Quarter Sessions who are incarcerated in state prisons other than Camp Hill." *Wilson Appeal*, 214 Pa. Superior Ct. 160, 167, 251 A. 2d 671, 675 (1969) (dissenting opinion).

5 See *Wilson Appeal*, 214 Pa. Superior Ct. 160, 162-68, 251 A. 2d 671, 672-675 (1969).

judication of delinquency; (2) the ultimate conclusions upon which the finding of delinquency is based, and the facts supporting each of them, must be clearly found and set forth in the adjudication; and (3) it must be clear that the longer commitment will result in the juvenile's receiving appropriate rehabilitative care and not just in his being deprived of his liberty for a longer time.[6] If all three of these conditions are present, a juvenile may be deprived of his liberty for a period in excess of the maximum sentence which he could have received if treated as an adult.

Our holdings on this and on the other two points raised by Wilson make it unnecessary to venture into the thicket of reasonableness and decide whether the trial court abused its discretion in this case.[7]

Order of Superior Court reversed, adjudication and commitment vacated and case remanded for further proceedings consistent with this opinion.

Mr. Justice EAGEN and Mr. Justice POMEROY concur in the result.

---

[6] A central premise of the Juvenile Court Law is that the post-adjudication treatment of the juvenile delinquent is somehow different from and better than that which the adult offender must endure, as is demonstrated by the Juvenile Court Law's discussion of the possible institutional dispositions of juvenile delinquents: "The Court may

. . .

"(c) Commit a child to some suitable institution or to the care of an incorporated association or society, one of whose objects is the care, guidance and control of delinquent, dependent and neglected children. . . .

"(d) Commit a child to an industrial or training school, or county institution or school maintained for such purpose, willing to receive it, for care, guidance and control."

Act of June 2, 1933, P. L. 1433, 11 P.S. §250(c)-(d).

[7] Review of this question would be almost impossible without the benefit of an opinion by the hearing judge. Noting that none was filed, we take this opportunity to point out that the requirements of our Rule 63 apply to juvenile cases as well as to all others.

CONCURRING OPINION BY MR. JUSTICE COHEN:

I agree with the majority that Wilson was denied the right to "adequate and timely notice" mandated by *In re Gault,* 387 U.S. 1 (1967), and that the record must be remanded for a new trial. I do not, however, concur in the reasoning expressed by the majority in the paragraph entitled "Equal Protection."

First, it is absolutely unnecessary to reach this issue as the failure to give adequate notice makes a new trial mandatory. Also, assuming the majority is correct in holding that the sentence given Wilson violates the Equal Protection Clause, the remedy, if that were the only error below, would be to remand for resentencing. Since we have already determined that a whole new trial must be held, there is no point in discussing the narrower question of the proper sentencing procedure.

Second, the majority states that Wilson was found delinquent as a result of the assault and battery charges and that "[i]t is our view that there can be no constitutionally valid distinction between a juvenile and an adult offender which justifies making one of them subject to a longer maximum commitment in the same institution for the same conduct." This reasoning is directly contradictory to that expressed in the paragraph on notice. In that section the majority states: "It is quite clear that the hearing judge in this case drew no distinction between those issues which were relevant to the adjudication and those which were important only in determining the length of commitment. Rather, he obviously based the adjudication of delinquency on two previous incidents in which Wilson had been involved, a school suspension and a 'burglary,' as well as on the finding that he had participated in the street fight that led to the initiation of the proceedings."

434

The record discloses the following colloquy. THE COURT: Were you suspended from school also? You seem to be in need of some stricter discipline. Isn't that about right? WILSON: I don't know. THE COURT: You don't know. Well, if you don't know, the court so finds *from the testimony in this case and from your prior conduct.* The court adjudges Charles Laverne Wilson a delinquent and commits him to the State Correctional Institution at Camp Hill, Pennsylvania. . . ." (Emphasis added) It is because Wilson was not given notice of the fact that conduct other than that involved in the assault and battery charge would be evaluated in determining whether he were a delinquent that the majority remands for a new trial. I do not understand how it can then say that the conduct which led to his five-year sentence was the same as would lead to a maximum two-year sentence if he had been tried as an adult. The conduct which led to the finding of delinquency and the five-year sentence was not only that conduct which would support a charge of simple assault and battery. Additional conduct was involved, and as such, it is incorrect to state that Wilson was denied the equal protection of the laws because the conduct for which he was sentenced was the same as that which would have produced a two-year sentence if he had been tried as an adult.

Finally, I cannot concur in the majority's conclusion that a juvenile may be committed for a period longer than that to which he would be subject were he an adult if their three factors are present. The first two factors must be present in every delinquency adjudication regardless of the prospective sentence, and as to them there can be no question. The third factor, however, states "it must be clear that the longer commitment will result in the juvenile's receiving appropriate rehabilitative care and not just in his being deprived of his liberty for a longer time." I do not see how the sen-

tencing court at the time of imposing sentence or the Superior Court or this Court on appeal can determine whether a certain period of commitment will result in appropriate rehabilitative care or deprivation of liberty. Use of this approach will require courts to guess what the defendant will be doing and what will be done for him during the period of commitment, and it is being unrealistic to expect that courts can make such a determination in a meaningful way. Aside from these three factors, I do not believe that a juvenile can ever be incarcerated for a longer period than an adult for the same conduct. However, the record discloses that this is not the factual situation now before us.

As I agree with the majority that Wilson did not receive the notice required by *Gault*, I concur in the grant of a new trial.

Mr. Chief Justice BELL joins in this opinion.