112 N.J. Super. 544 (1970)
271 A.2d 921
THE STATE OF NEW JERSEY IN THE INTEREST OF K.V.N.
Superior Court of New Jersey, Juvenile and Domestic Relations Court, Union County.
Decided December 8, 1970.
*545 Mr. Robert A. Kopnicki, Assistant Prosecutor, for the State (Mr. Karl Asch, Union County Prosecutor, attorney).
Mr. Leonard A. Wolkstein, Assistant Deputy Public Defender, for the juvenile (Mr. Stanley C. Van Ness, Public Defender, attorney).
KENTZ, P.J.J. & D.R.C.
A complaint was filed against the juvenile charging that he was under the influence of heroin, in violation of N.J.S.A. 2A:4-14. The juvenile was adjudicated delinquent on the complaint and on August 5, 1970 an order was entered committing the juvenile to the New Jersey Reformatory for Males for an indefinite term not to extend beyond his twenty-first birthday, pursuant to N.J.S.A. 2A:4-37. At the time of the entry of the order the juvenile was 17 years of age.
*546 Thereafter, a motion was made to limit the commitment to a term not greater than six months. It is argued that the maximum sentence an adult could be given for the same offense is six months, N.J.S.A. 2A:170-8, 2A:169-4, and that an indefinite term such as was here imposed constitutes an unjustifiable differentiation in treatment, thereby denying the juvenile equal protection of the law. This attack upon the dispositional phase of the juvenile system presents a novel issue in this State.
It is contended that in light of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and subsequent interpretations and extensions of the Gault decision granting additional constitutional safeguards to juveniles, the juvenile in the present case is being denied equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution.
The juvenile system has had the benefit of continuous judicial refinement in recent years. The United States Supreme Court decided in In re Gault, supra, that a juvenile was entitled to the four basic rights of notice of the charges, representation by counsel, confrontation and cross-examination of witnesses, and the Fifth Amendment privilege against self-incrimination. See, e.g., In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), holding that a determination of delinquency in a juvenile proceeding must be based upon proof beyond a reasonable doubt; State in the Interest of Carlo, 48 N.J. 224 (1966), applying the constitutional safeguards with respect to voluntariness to govern the use of confessions in juvenile court; State in the Interest of B.D., 110 N.J. Super. 585 (App. Div. 1969), aff'd 56 N.J. 325 (1970), excluding confessions not obtained by methods consistent with due process requirements; State v. J.M., 110 N.J. Super. 337 (App. Div. 1970), requiring that all the elements of the crime charged be proven in order to constitute proof beyond a reasonable doubt: State in the Interest of W.O., 100 N.J. Super. 358 (App. Div. 1970), allowing sequestration of witnesses in juvenile hearings; *547 State v. Lowry, 95 N.J. Super. 307 (Law Div. 1967), applying the search and seizure provisions of the Fourth Amendment to juveniles; State in the Interest of L.B., 99 N.J. Super. 589 (J. & D.R. Ct. 1968), holding that a motion to suppress evidence may be made in Juvenile and Domestic Relations Court; State in the Interest of B.H., 112 N.J. Super. 1 (J. & D.R. Ct. 1970), interpreting the defense of statute of limitations under the Disorderly Persons Act as substantive and available to juveniles. See also, State in the Interest of C.S. and J.C., 112 N.J. Super. 144 (App. Div. 1970); State in the Interest of L.M., 56 N.J. 358 (1970); State v. Tuddles, 38 N.J. 565 (1962); State v. Van Buren, 29 N.J. 548 (1959); State in the Interest of L.M., 109 N.J. Super. 278 (App. Div. 1970), aff'd 57 N.J. 165 (1970).
It is clear that the United States Supreme Court by its decision in Gault initiated a trend toward the application of the constitutional safeguards available to adults to the juvenile court system. The court was skeptical about the claimed benefits granted juveniles by reason of the informal atmosphere and rehabilitative dispositions to training schools or correction centers. Mr. Justice Fortas, speaking for the court, stated:
The fact of the matter is that, however euphemistic the title, a "receiving home" or an "industrial school" for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. [387 U.S. at 27, 87 S.Ct. at 1443.]
Although Gault specifically stated that the dispositional phase of juvenile proceedings was not an issue there, 387 U.S. at 10, 87 S.Ct. 1428, it has been argued by counsel for the juvenile herein that subsequent cases have extended the Gault principle to reach this question. In re Wilson, 438 Pa. 425, 264 A.2d 614 (Sup. Ct. 1970).
The disposition of juvenile offenders to terms which may result in commitment for a period of time longer than that *548 which an adult could receive for the same offense has been held to be not violative of the equal protection clause of the Constitution by five Circuit Courts of Appeals. Cunningham v. United States, 256 F.2d 467 (5 Cir.1958); Carter v. United States, 113 U.S. App. D.C. 123, 306 F.2d 283 (1962); Standley v. United States, 318 F.2d 700 (9 Cir.1963); Rogers v. United States, 326 F.2d 56 (10 Cir.1963); Brisco v. United States, 368 F.2d 214 (3 Cir.1966). In all five cases the constitutionality of the Federal Youth Corrections Act, 18 U.S.C.A. 5005-5024, was upheld.
I am aware that all of the above cited cases were decided prior to Gault. However, in Smith v. State, 444 S.W.2d 941 (Tex. Civ. App. 1969), the court sustained the difference in treatment of juveniles, stating that the standard to be applied to classifications under the equal protection clause in regard to juveniles is that which requires only a reasonable nexus between the classification and a valid governmental objective. Such a standard of review requires a juvenile to show how the classification is unreasonable or that the objective or purpose is merely illusory. In other words, assuming that the theoretical purpose is reasonable, the juvenile has the burden of showing that the classification is unreasonable in practice. See also, R.R. v. Texas, 448 S.W.2d 187 (Tex. Civ. App. 1969), app. dism, 400 U.S. 808, 91 S.Ct. 35, 27 L.Ed.2d 37 (1970).
Counsel for the juvenile contends that the classification is theoretically unreasonable and also claims that the State should have the burden of substantiating the claimed justification for the difference in treatment.
I do not believe that Gault can be construed to mean that the juvenile system is inherently unreasonable. Gault itself recognized the difference in juvenile proceedings when it said:
As we shall discuss, the observance of due process standards, intelligently and not ruthlessly administered, will not compel the States to abandon or displace any of the substantive benefits of the juvenile process. [387 U.S. at 21, 87 S.Ct. at 1440.]
*549 I agree with the pronouncement of the Pennsylvania Superior Court which said in Commonwealth v. Johnson, 211 Pa. Super. 62, 234 A.2d 9 (1967), cited with approval by this State's Supreme Court in State in the Interest of J.W., 57 N.J. 144 (1970):
It is inconceivable to us, however, that our highest Court attempted through Gault, to undermine the basic philosophy, idealism and purposes of the juvenile court. We believe that the Supreme Court did not lose sight of the humane and beneficial elements of the juvenile court system; it did not ignore the need for each judge to determine the action appropriate in each individual case; it did not intend to convert the juvenile court into a criminal court for young people. Rather, we find that the Supreme Court recognized that juvenile courts, while acting within the constitutional guarantees of due process, must, nonetheless, retain their flexible procedures and techniques. [at 145]
It needs no citation to state that the philosophy of the juvenile court system is the education, treatment and rehabilitation of the juvenile rather than punishment. With such a purpose it can hardly be argued that a classification based on age is so arbitrary, irrational or capricious as to render the treatment of juveniles unconstitutional as a denial of equal protection. Smith v. State, supra. Furthermore, there is the presumption in favor of constitutionality. Harvey v. Board of Chosen Freeholders, Essex County, 30 N.J. 381 (1959).
However, it was pointed out in Smith v. State, supra, that there is another category of cases wherein the presumption of constitutionality is not nearly so great. The court stated:
In these cases, the statute is subjected to the "the most rigid scrutiny", Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944), and the ordinary presumption of constitutionality seems to melt away, so that the burden is on the person defending the statute to show a substantial, empirically grounded justification to support the differentiation. Loving v. Virginia, 388 U.S. 1, 8-9, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); McLaughlin v. Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); "Developments in the law  Equal Protection", *550 82 Harv. L. Rev. 1067, 1087-1123 (1969). [444 S.W.2d at 946]
Under this line of cases the basis of the classification is examined to determine if there is reasonable cause for the categorization, and even if the basis is determined to be reasonable, the application of the classification is examined for reasonableness with regard to due process and equal protection.
A classification based on age has never been considered inherently unreasonable. Smith v. State, supra. If it were, the entire juvenile system would be unreasonable. Therefore, if there is any prejudice to the juvenile, it must be in the application of the classification. It could be argued that the disparity in the length of sentence so infringes upon the fundamental rights of a juvenile as to render the classification unreasonable if the classification stood alone. However, the classification must be examined in the context of the juvenile system and the benefits extended to the juvenile thereby.
If the young offender were merely committed for a length of time four or five times greater than the maximum sentence for an adult, such a result would probably render the classification unreasonable. In re Wilson, supra. However, such is not the case here. The juvenile is treated under the juvenile system whereby the indeterminate commitment may result in a longer period of confinement, but the place and purpose of that confinement generally is not the same as that for adult offenders, and the indeterminate term might just as easily result in a lesser period of confinement depending on the juvenile's progress. The place of confinement is usually geared toward teaching and rehabilitating the youthful offender and not for punishment. See, Urbaniak, "The History and Philosophy of the New Jersey Reformatory System" (1968). Compare, In re Wilson, supra, with N.J.S.A. 2A:4-1 et seq.
Assuming the good intentions of the juvenile system, the classification based on age and its application to commitment *551 is theoretically reasonable. The question that remains is whether a juvenile has the burden of proof to show that the juvenile system does not in practice live up to the high theoretical ideals.
If the presumption of constitutionality is to have any effect, the burden of proof must be on the juvenile. It is not the function of this court to order the State to conduct what would constitute a legislative investigation. The judicial and correctional functions of the juvenile system have been established by statute specifically stating the purposes and goals of the rehabilitative process. N.J.S.A. 2A:4-1 et seq. If those laws are not being complied with and the stated benefits of the juvenile system are no more than euphemisms, then judicial inquiry might be warranted. However, no evidence has been introduced here which would indicate that the juvenile process in the State affords the youthful offender no more than a longer period of confinement.
The motion to limit the commitment is denied. An order will be entered.