STATE OF NEW JERSEY IN THE INTEREST OF K. V. N.

Superior Court of New Jersey
Appellate Division

Argued October 19, 1971—Decided October 29, 1971.

582

Before Judges KILKENNY, LABRECQUE and LANE.

*Mrs. Rosemary K. Reavey,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mrs. Reavey,* of counsel and on the brief).

*Mr. Elson P. Kendall,* Assistant Prosecutor, argued the cause for respondent (*Mr. Karl Asch,* Union County Prosecutor, attorney; *Mr. Anthony N. Palumbo,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by
LANE, J. A. D. K. V. N., a juvenile 17 years old at the time, was found delinquent based upon a complaint charging that on February 6, 1970 he endangered his health, morals and general welfare by being "under the influence of a narcotic drug, namely heroin." On August 5, 1970 he was committed to the New Jersey Reformatory (now Youth Correctional Institution Complex) for an indeterminate term not to extend beyond his twenty-first birthday (*N. J. S. A.* 2A:4-37). Following his commitment the juvenile moved to limit the term of commitment to not more than six months on the ground that that was the maximum senence an adult could receive for being under the influence of a narcotic drug, then a violation of the Disorderly Persons Act, *N. J. S. A.* 2A:170-8 (now dealt with in *N. J. S. A.* 24:21-20(b)). The trial court denied the motion, setting forth its reasons in a comprehensive written opinion. *State in the Interest of K. V. N.,* 112 *N. J. Super.* 544 (J. & D. R. Ct., 1970). The juvenile appeals from the order denying his motion.

The juvenile argues that because he is a juvenile he has been committed to the Youth Correctional Institution Complex for an indeterminate term, with the possibility of being confined for four years, when the maximum sentence an adult could receive for the same conduct would be six months' imprisonment. He further argues that since in fact there are no distinctions made at the Correctional Institution between adults and juveniles he thereby receives no special beneficial and rehabilitative treatment while he is confined and thus the classification based on age for the purposes of confinement is unjustifiable. Essentially he argues that he has been denied his constitutional guarantee of equal protection.

I

Recent United States Supreme Court cases have indicated that the equal protection clause of the Fourteenth Amendment should be available to the juvenile in appropriate aspects of the juvenile system.

In *In re Gault,* 387 *U. S.* 1, 87 *S. Ct.* 1428, 18 *L. Ed.* 2d 527 (1967), the United States Supreme Court held that neither the Fourteenth Amendment nor the Bill of Rights was for adults alone. Applying the due process clause of the Fourteenth Amendment to juvenile court proceedings, the court held that a juvenile has the right to notice of charges, right to counsel, right to confrontation and examination of witnesses, and right to privilege against self-incrimination. The court was careful to point out that it was not considering the impact of the Fourteenth Amendment or Bill of Rights upon the totality of the relationship between juvenile and state. Neither was it considering the entire process relating to juvenile delinquents, specifically stating that it was not considering any aspect of the dispositional process of the system. The court appeared to assume the validity of confinement of a juvenile which possibly could be longer than that of an adult for the same conduct. The

court appeared to base its application of the due process standards to a juvenile court proceeding partially on this assumption.

See also *In re Winship*, 397 *U. S.* 358, 90 *S. Ct.* 1068, 25 *L. Ed.* 2d 368 (1970).

In *Kent v. United States*, 383 *U. S.* 541, 86 *S. Ct.* 1045, 16 *L. Ed.* 2d 84 (1966), Justice Fortas indicated the court's concern over the practical application of the juvenile proceedings. He said:

While there can be no doubt of the original laudable purpose of juvenile courts, studies and critiques in recent years raise serious questions as to whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guaranties applicable to adults. There is much evidence that some juvenile courts, including that of the District of Columbia, lack the personnel, facilities and techniques to perform adequately as representatives of the State in a *parens patriae* capacity, at least with respect to children charged with law violation. There is evidence, in fact, that there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children. [383 *U. S.* at 555–556, 86 S. Ct. at 1054.]

Recent decisions in New Jersey have considered the effect of *In re Gault, supra,* 387 *U. S.* 1, 87 S. Ct. 1428.

In *State in the Interest of J. W.*, 57 *N. J.* 144 (1970), in holding that a juvenile was not entitled to a jury trial, the court discussed the effect of *In re Gault* as to the New Jersey juvenile system. The court said:

We agree with the general statement of the Pennsylvania Superior Court which said in *Commonwealth v. Johnson*, 211 *Pa. Super.* 62, 234 *A.* 2d 9 (Super. Ct. 1967), cited by the Pennsylvania Supreme Court in *In re Terry*, 438 *Pa.* 339, 265 *A.* 2d 350, 355 (1970), *prob. juris. noted* [McKeiver v. Pennsylvania], 399 *U. S.* 925, 90 *S. Ct.* 2271, 26 *L. Ed.* 2d 791:

"It is inconceivable to us, however, that our highest Court attempted, through *Gault*, to undermine the basic philosophy, idealism and purposes of the juvenile court. We believe that the Supreme Court did not lose sight of the humane and beneficial elements of the juvenile court system; it did not ignore the need for each judge

to determine the action appropriate in each individual case; it did not intend to convert the juvenile court into a criminal court for young people. Rather, we find that the Supreme Court recognized the juvenile courts, while acting within the constitutional guarantees of due process, must, nonetheless, retain their flexible procedures and techniques. The institution of jury trial in juvenile court, while not materially contributing to the fact-finding function of the court, would seriously limit the court's ability to function in this unique manner, and would result in a sterile procedure which could not vary to meet the needs of delinquent children." [57 *N. J.* at 145–146.]

In *State in the Interest of L. N.*, 109 *N. J. Super.* 278 (App. Div.), aff'd o. b. 57 *N. J.* 165 (1970), the court held that subsections (i) and (m) of section (2) of *N. J. S. A.* 2A:4–14, permitting an adjudication of delinquency to be based either on a juvenile's growing up in idleness or delinquency, or on deportment endangering morals, health or general welfare of the juvenile, was not a violation of due process. The court discussed the effect of *In re Gault:*

We are satisfied that the Supreme Court did not intend *In re Gault* to undermine the basic philosophy, idealism and purposes of juvenile courts. *Commonwealth v. Johnson*, 211 *Pa. Super.* 62, 234 *A.* 2d 9 (Super. Ct. 1967). The juvenile court proceeding is not the trial of a child charged with a crime but is mercifully designed to save him from such an ordeal in the future. *State v. Monahan*, 15 *N. J.* 34, 37 (1954), *cert.* den. 348 *U. S.* 889, 75 *S. Ct.* 210, 99 *L. Ed.* 698 (1954). It has been said to be designed to make men out of errant boys. *State, in the Interest of Carlo*, 48 *N. J.* 224, 244 (1966) (concurring opinion Weintraub, C. J.) ; *State v. Tuddles*, 38 *N. J.* 565, 571–573 (1962). The State as *parens patriae* has a duty to see to it that a minor does not live a life of delinquency. *In re State in Interest of S. I.*, 68 *N. J. Super.* 598, 604 (J. & D. R. Ct. 1961). In general, the determination of what activities involve danger that a child will become a hazard to himself or to society rests with the Legislature, and its policies may not be interfered with by us simply because we may disagree with their wisdom. *State v. Monahan, supra,* 15 *N. J.* at 46. [109 *N. J. Super.* at 285–286]

Notwithstanding the seeming reluctance of our courts to extend the *Gault* philosophy further than necessary, it is doubtful that a juvenile can be denied the constitutional guarantee of equal protection within the dispositional process

of the juvenile system. We proceed on the assumption that he cannot be denied such guarantee. The question is whether the classification for dispositional purposes based upon the age of the violator is contrary to the equal protection clause.

## II

While a State has broad classification power, *Ferguson v. Skrupa*, 372 *U. S.* 726, 732, 83 *S. Ct.* 1028, 1032, 10 *L. Ed.* 2d 93, 98 (1963), the United States Supreme Court has said that the equal protection clause requires more of a state law than nondiscriminatory application within the class it establishes. It imposes a requirement of some rationality in the nature of the class singled out. It is not a demand that a statute necessarily apply equally to all persons. It does require that in defining a class subject to legislation, the distinctions that are drawn have some relevance to the purpose for which the classification is made. *Rinaldi v. Yeager*, 384 *U. S.* 305, 308–309, 86 *S. Ct.* 1497, 1499–1500, 16 *L. Ed.* 2d 577, 580 (1966). While a state has broad power when it comes to making classifications, it may not draw a line which constitutes an invidious discrimination against a particular class. The test is whether the line drawn is rational. *Levy v. Louisiana*, 391 *U. S.* 68, 71, 88 *S. Ct.* 1509, 1511, 20 *L. Ed.* 2d 436, 439, rehearing denied 393 *U. S.* 898, 89 *S. Ct.* 65, 21 *L. Ed.* 2d 185 (1968). The equal protection clause does not require that things different in fact be treated in law as though they were the same. *Tigner v. Texas*, 310 *U. S.* 141, 147, 60 *S. Ct.* 879, 882, 84 *L. Ed.* 1124, 1128 (1940). Generally state legislatures are presumed to have acted within their constitutional power despite the fact that in practice their laws result in inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *McGowan v. Maryland*, 366 *U. S.* 420, 425–426, 81 *S. Ct.* 1101, 1105, 6 *L. Ed.* 2d 393, 399 (1961).

In applying the equal protection clause to social and economic legislation the United States Supreme Court has

given great latitude to the legislatures in making classifications. *Dandridge v. Williams,* 397 *U. S.* 471, 485, 90 *S. Ct.* 1153, 1161, 25 *L. Ed.* 2d 491, 501–502 (1970); *Levy v. Louisiana, supra,* 391 *U. S.* at 71, 88 S. Ct. 1509. See *McGowan v. Maryland, supra,* 366 *U. S.* 420, 81 S. Ct. 1101; *Williamson v. Lee Optical Co.,* 348 *U. S.* 483, 489, 75 *S. Ct.* 461, 465, 99 *L. Ed.* 563, 573 (1955). However, it has been extremely sensitive when civil rights are involved, adopting a strict standard. *Levy. v. Louisiana, supra; Harper v. Virginia Board of Elections,* 383 *U. S.* 663, 669–670, 86 *S. Ct.* 1079, 1082–1083, 16 *L. Ed.* 2d 169, 174 (1966); *Skinner v. Oklahoma ex rel. Williamson,* 316 *U. S.* 535, 541, 62 *S. Ct.* 1110, 1113, 86 *L. Ed.* 1655, 1660 (1942). It has not hestitated to strike down a classification as invidious even though the legislation had history and tradition behind it. *Brown v. Bd. of Ed.,* 347 *U. S.* 483, 74 *S. Ct.* 686, 98 *L. Ed.* 873 (1954); *Harper v. Virginia Bd. of Elections, supra,* 383 *U. S.* at 669, 86 *S. Ct.* 1079. Where a classification is either predicated on race, alienage, nationality or penalizes a fundamental right, the classification must be carefully and meticulously scrutinized; the presumption of constitutionality disappears, and the state has the burden of showing a compelling governmental interest. *Graham v. Richardson,* 403 *U. S.* 365, 91 *S. Ct.* 1848, 1852, 1854, 29 *L. Ed.* 2d 534, 541–542 (1971); *Kramer v. Union Free School District,* 395 *U. S.* 621, 626, 89 *S. Ct.* 1886, 1889, 23 *L. Ed.* 2d 583, 589 (1969); *Cipriano v. City of Houma,* 395 *U. S.* 701, 704, 89 *S. Ct.* 1897, 1899, 23 *L. Ed.* 2d 647, 650–651 (1969); *Shapiro v. Thompson,* 394 *U. S.* 618, 634, 89 *S. Ct.* 1322, 1331, 22 *L. Ed.* 2d 600, 615 (1969); *Loving v. Virginia,* 388 *U. S.* 1, 8–9, 11, 87 *S. Ct.* 1817, 1822, 1823, 18 *L. Ed.* 2d 1010, 1015–1016, 1017–1018; *Harper v. Virginia Bd. of Elections, supra,* 383 *U. S.* at 670, 86 *S. Ct.* 1079; *McLaughlin v. Florida,* 379 *U. S.* 184, 196, 85 *S. Ct.* 283, 290, 13 *L. Ed.* 2d 222, 231 (1964); *Korematsu v. United States,* 323 *U. S.* 214, 216, 65 *S. Ct.* 193, 194, 89

*L. Ed.* 194, 199 (1944), reh. den. 324 *U. S.* 885, 65 *S. Ct.* 674, 89 *L. Ed.* 1435 (1945) ; *Skinner v. Oklahoma ex rel. Williamson, supra,* 316 *U. S. at* 541, 62 S. Ct. 1110. See, discussion of the equal protection clause in *Oregon v. Mitchell,* 400 *U. S.* 112, 91 *S. Ct.* 260, 266, 27 *L. Ed.* 2d 272, 282 (1970) ; "Developments in the Law — Equal Protection" 82 *Harv. L. Rev.* 1067, 1087–1123 (1969).

██ In equal protection cases the New Jersey Supreme Court generally has followed the view that the equal protection clause does not deprive the State of the power to classify in the adoption of police laws but allows wide discretion, precluding only that done without any reasonable basis and therefore purely arbitrary. The constitutionality of a legislative classification is presumed, and one who attacks the classification must carry the heavy burden of showing its arbitrariness. A classification having some reasonable basis is not invalid merely because it is not made with mathematical nicety or because in practice it results in some inequality. Only invidious discrimination is unconstitutional. *State v. Smith,* 58 *N. J.* 202, 207 (1971) ; *State v. Young,* 57 *N. J.* 240, 249 (1970), *cert.* den. 402 *U. S.* 929, 91 *S. Ct.* 1527, 28 *L. Ed.* 2d 863 (1971) ; *N. J. Chapt., Am. I. P. v. N. J. State Bd. of Prof. Planners,* 48 *N. J.* 581, 602–603, app. dism., *cert.* den. 389 *U. S.* 8, 88 *S. Ct.* 70, 19 *L. Ed.* 2d 8 (1967) ; *Shelton College v. State Bd. of Ed.,* 48 *N. J.* 501, 521 (1967) ; *David v. Vesta Co.,* 45 *N. J.* 301, 314–315 (1965).

In *State v. Young, supra,* 57 *N. J.* 240, defendant had challenged a statute prohibiting entering a school with intent to disturb the peace and good order of the school as violative of equal protection. The court applied the traditional test and held that it was not a violation of the equal protection clause to exclude from the prohibition a bona fide student, parent, legal guardian, teacher, administrator or school employee. Defendant argued that the strict test should be applied and that the State must therefore show

a compelling governmental interest. Chief Justice Weintraub noted that the court was not dealing with a classification drawn on racial, ethnic, national or religious bases, which, being inherently suggestive of the invidious, might *per se* invalidate a classification or at least make it suspect. Discussing the active or strict standard he said:

> Defendant says that if the classification may stand under the traditional test we have just applied, still it must fall under decisions of the United States Supreme Court which require that a "compelling state interest" be shown to sustain classifications in certain areas. This controversial concept has been applied to statutes denying the right to vote, *Kramer v. Union Free School District No. 15*, 395 *U. S.* 621, 89 *S. Ct.* 1886, 23 *L. Ed.* 2d 583 (1969) ; *Evans v. Cornman*, 398 *U. S.* 419, 90 *S. Ct.* 1752, 26 *L. Ed.* 2d 370 (1970). The same concept was invoked with respect to a residency requirement for welfare benefits, and this upon a finding that the denial of benefits impaired the constitutionally secured right to travel. *Shapiro v. Thompson*, 394 *U. S.* 618, 89 *S. Ct.* 1322, 22 *L. Ed.* 2d 600 (1969). We note that in *Dandridge v. Williams*, 397 *U. S.* 471, 90 *S. Ct.* 1153, 25 *L. Ed.* 2d 491 (1970), where a statute relating to county welfare benefits fixed a maximum limit without regard to the number of the members of a family, but where, unlike *Shapiro*, the statute did not draw a line related to migration, *i. e.*, residency, the classification issue was resolved in conventional terms without reference to a "compelling state interest."
> We cannot know how expansive the reach of the new concept will be. Suffice it to say that it has been applied to the denial of a right and indeed a right thought to involve a "fundamental interest," *i. e.*, right to vote and the right to migrate. The statute before us does not deny to some a common right belonging to all. There is no right to enter a school building with the hostile intent the statute forbids. [at 251–252]

The juvenile argues that the State has the burden of showing the classification is constitutional; that is, that the strict standard should be applied.

 The Constitution permits qualitative differences in meting our punishment, and there is no requirement that two persons convicted of the same offense receive identical sentences. *Cf. Williams v. Illinois*, 399 *U. S.* 235, 243, 90 *S. Ct.* 2018, 2023, 26 *L. Ed.* 2d 586, 594 (1970).

In New Jersey it has been recognized that the Legislature has wide discretion in the creation or recognition of different classes of offenders for separate treatment and that in the administration of criminal justice no person can be subject to a greater or different sentence for an offense than that to which others of the same class are subjected. The constitutional prescription for equal protection does not mean that a designated sanction must reach or be imposed upon every class of violators of a particular law to which it might apply. It does not mean that the Legislature must punish or regulate all such persons in precisely the same way or not at all. *State v. Smith, supra,* 58 *N. J.* at 206–207.

Since the Legislature can properly treat a particular class differently for the purpose of sentencing, if the classification is invalid it must be because a classification based on age is either *per se* invalid, or invalid because there is no rational nexus between the classification and a state interest, or invalid because the state has not shown a compelling need.

## III

A classification based on age has been held proper if it is for the benefit or protection of those so classified or for the protection of the public. *State ex rel. Emerson v. Erickson,* 159 *Minn.* 287, 198 *N. W.* 1000 (Sup. Ct. 1924); *State v. Rosenfield,* 111 *Minn.* 301, 126 *N. W.* 1068 (Sup. Ct. 1910). See *Smith v. State,* 444 *S. W.* 2d 941 (Tex. Civ. App. 1969), application for writ of error refused; *R. R. v. State,* 448 *S. W.* 2d 187 (Tex. Civ. App. 1969), application for writ of error refused, appeal dismissed 400 *U. S.* 808, 91 *S. Ct.* 35, 27 *L. Ed.* 2d 37 (1970).

The disposition of juvenile offenders under the Youth Corrections Act, 18 *U. S. C. A.* §§ 5005 *et seq.,* to terms which may result in commitment for a period of time longer than that which an adult could receive for the same offense has been held consistently not to be violative of the

equal protection clause, due process clause, or the Eighth Amendment (cruel and unusual punishment). *Caldwell v. United States*, 435 *F*. 2d 1079 (10 Cir. 1970); *Guidry v. United States*, 433 *F*. 2d 968 (5 Cir. 1970); *United States v. Rehfield*, 416 *F*. 2d 273 (9 Cir. 1969); *United States v. Dancis*, 406 *F*. 2d 729 (2 Cir. 1969); *Foston v. United States*, 389 *F*. 2d 86 (8 Cir. 1968); *Johnson v. United States*, 374 *F*. 2d 966 (4 Cir. 1967); *Brisco v. United States*, 368 *F*. 2d 214 (3 Cir. 1966); *Rogers v. United States*, 326 *F*. 2d 56 (10 Cir. 1963); *Carter v. United States*, 113 U. S. App. D. C. 123, 306 *F*. 2d 283 (1962); *Cunningham v. United States*, 256 *F*. 2d 467 (5 Cir. 1958).

The classification based on age is not *per se* invalid.

## IV

At least one state court has upheld state statutory provisions for the use of age for classification in the disposition of violators of criminal statutes, finding that there was a rational nexus between the classification and the state interest.

In *Smith v. State, supra*, 444 *S. W*. 2d 941, a juvenile adjudged delinquent and sentenced to confinement in the state training school for boys for a period not to extend beyond his twenty-first birthday appealed from a denial of an application for a writ of habeas corpus. He faced a possible confinement for five years for carrying a switchblade knife. An adult convicted of the same offense could be confined for a maximum of one year and might escape with no more than the payment of a fine. The juvenile argued that the difference in confinement was based solely on age and was therefore a denial of equal protection and due process. The court noted that conceivably under the Texas juvenile system a juvenile of 10 years could be confined for 11 years for conduct which would subject an adult to no more than a fine or confinement for a few days. Stating that the equal protection clause does not prevent a selection of a class for

different treatment, the court said the issue was whether or not there was an existence of a rational nexus between the classification and a valid governmental interest. Noting that the United States Supreme Court had utilized two approaches in dealing with the equal protection clause, the court said that if it were to apply the traditional test, it must rule the juvenile's appeal to be without merit. The purpose of the statute involved was the education, treatment and rehabilitation rather than retributive punishment. The court cited the fact that the juvenile proceedings are civil rather than criminal; that the hearing results in an adjudication rather than conviction; that confinement is to a training school rather than a prison; that an adjudication of delinquency does not carry with it any civil liabilities ordinarily resulting from a conviction of crime; that a juvenile delinquent is not considered a criminal. The court said:

> * * * it requires no straining of the judicial imagination to find the existence of a reasonable relationship between the legislative purpose and the use of age as the classifying trait. It is indisputably the province of the Legislature to determine the manner in which various offenders will be treated, and if the difference in treatment is founded upon an arguably rational basis, the legislative decision is determinative. The Legislature could reasonably have concluded that children, as a class, should be subject to indefinite periods of confinement, not to extend beyond their twenty-first birthday, in order to insure sufficient time to accord the child sufficient treatment of the type required for his effective rehabilitation. This conclusion might be based on physiological and psychological differences between children and adults, the types of crimes committed by children, their relation to the criminal world, their unique susceptibility to rehabilitation, and their reaction, as a class, to confinement and discipline, as well as reformative treatment. It is true that some or all of these conclusions are based on sociological, psychological, and penological theories which are not universally agreed on among so-called social scientists, but the fact that eminent scholars believe such theories to be valid prevents us from branding them as palpably irrational. [at 945]

Since the juvenile made no showing to refute the conclusion that juveniles who engage in deviant conduct require a different type and manner of confinement than do adult

criminals, the court found that the presumption of constitutional validity prevailed.

The juvenile concedes that the classification in theory is reasonable. However, he argues that in practice there is no rational basis for it since adults and juveniles are treated alike in the same institution.

The juvenile does not deny the fact that the Youth Correctional Institution Complex is geared toward rehabilitation rather than punishment. The thrust of his appeal is based on the fact that some adult offenders (males between the ages of 15 and 30 years who have not previously been sentenced to a State Prison in any State, *N. J. S. A.* 30:4–147) are sentenced to the Correctional Institution as well as juvenile offenders. Within the Correctional Institution apparently they are treated similarly. The juvenile receives little special treatment. See, Urbaniak, "The History and Philosophy of the New Jersey Reformatory System" (1968); Fauver, "New Jersey Reformatory, Annandale, Program Synopsis" (1970). Since the treatment is basically the same for adult and juvenile, the juvenile argues the classification has no rational basis and is a violation of equal protection.

A juvenile, if sentenced to the Correctional Institution, must be sentenced to an indeterminate term not to extend beyond his twenty-first birthday. Once properly sentenced to the Correctional Institution, the question of release is solely within the discretion of the board of managers of the Youth Correctional Institution Complex. See *In re Legdon,* 13 *N. J. Super.* 405, 409 (Cty. Ct. 1951). *Cf. In re Nicholson,* 69 *N. J. Super.* 230, 233 (App. Div. 1961); *N. J. S. A.* 30:4–148. A juvenile may be released after one month, six months or longer depending on his response to the treatment.

The fact that adults and juveniles may be treated the same in the Correctional Institution does not indicate that the classification of juveniles in respect to sentencing is without a reasonable nexus. As the sentence for the juvenile may be other than what an adult would receive, the indeter-

minate term for an adult is other than what he would have received if not sentenced to the Correctional Institution. For both, the classification is related to the State's interest in rehabilitating its citizens. Additionally, although a juvenile might be sentenced to the same institution as an adult, the juvenile is accorded benefits not accorded the adult. See *N. J. S. A.* 2A:4–39.

It should be noted that young adults, 22 to 26 years old, may be sentenced under the Youth Corrections Act, 18 *U. S. C. A.* § 5005 *et seq.,* and incarcerated with juveniles. 18 *U. S. C. A.* § 4209. See *United States v. Waters,* 141 U. S. App. D. C. 289, 437 *F.* 2d 722 (1970). As previously noted, this act has been upheld consistently.

There is a reasonable nexus between the classification by age and the State's interest in rehabilitation of juvenile offenders.

## V

The issue remains as to whether the court should suspect the classification and place the burden on the State to show that the juvenile is in fact given treatment towards rehabilitation. The juvenile argues that *In re Wilson,* 438 *Pa.* 425, 264 *A.* 2d 614 (Sup. Ct. 1970), and *In re Brown,* No. 17,997 (3 Cir., July 10, 1970), indicate that the burden is on the State.

In *In re Wilson* the juvenile was involved in an interracial street fight and adjudicated a delinquent based on two charges of simple assault and battery. He was committed to the State Correctional Institution and appealed. One of the grounds on appeal was that his commitment for a period potentially longer than that which an adult charged with two counts of simple assault and battery could receive violated the equal protection clause of the Fourteenth Amendment. The court held that there could be no constitutionally valid distinction between a juvenile and an adult offender which justified making one of them subject to a longer

maximum commitment in the same institution for the same conduct. Justice Roberts, however, then said:

> There can be circumstances under which a longer maximum commitment may be permissible, but only if three factors are present: (1) The juvenile must have notice at the outset of the proceedings of any and all factors upon which the state proposes to base the adjudication of delinquency; (2) the ultimate conclusions upon which the finding of delinquency is based, and the facts supporting each of them, must be clearly found and set forth in the adjudication; and (3) it must be clear that the longer commitment will result in the juvenile's receiving appropriate rehabilitative care and not just in his being deprived of his liberty for a longer time. If all three of these conditions are present, a juvenile may be deprived of his liberty for a period in excess of the maximum sentence which he could have received if treated as an adult. [264 *A.* 2d at 618]

It was held that the state had the burden of showing that the rehabilitative theory in fact did work. The court vacated the adjudication and commitment and remanded for further proceedings.

*In re Wilson* is distinguishable from the case before us. The disparity in treatment involved was between the adjudicated delinquent and a juvenile criminal. In Pennsylvania a minor between the ages of 16 and 18 could be treated at the discretion of the court either as an adult criminal offender and tried before the Court of Quarter Sessions or as a juvenile and tried under the Juvenile Court Act. In either case the commitment would be with few exceptions to the same institution, but the juvenile delinquent would receive an indeterminate term to his twenty-first birthday, whereas the juvenile criminal would receive a term with a maximum sentence, in this case shorter than the term of the juvenile delinquent.

In the present case, the juvenile argues that his conduct was equivalent to a disorderly persons' offense. As such, he argues that an adult convicted as a disorderly person for the same conduct could receive no more than a six months' sentence. *N. J. S. A.* 2A:169–4. The juvenile, however, ac-

knowledges that the adult could not be sentenced to the same institution the juvenile was committed to nor receive the same treatment.

In addition, the juvenile relies on *In re Brown, supra,* No. 17, 997 (3 Cir., July 10, 1970), an unreported opinion. The case was reargued and a reported opinion followed. *In re Brown,* 439 *F.* 2d 47 (3 Cir. 1971). A 14-year-old juvenile was convicted of petit larceny and committed to the Department of Social Welfare of the Virgin Islands until his eighteenth birthday. The juvenile filed a petition for the right to appeal from the judgment, alleging five grounds of appeal. The District Court denied his petition for leave to appeal. Under the Virgin Islands law, a juvenile has a right to appeal only upon leave granted. The juvenile appealed to the Circuit Court of Appeals from this denial. The issue before the court was whether or not the juvenile was denied his constitutional right to due process and equal protection by the denial of a right to appeal. The court held that the denial of that right was a violation of the equal protection clause. The holding is of no help to the juvenile before us.

In *Smith v. State, supra,* 444 *S. W.* 2d 941, the juvenile had argued that the strict approach to the equal protection issue should apply to the situation in which a juvenile is deprived of his liberty for an extensive period. Under this approach the statute would be subject to strict scrutiny and the burden would be on the State to show a substantial, empirically grounded justification to support the differentiation. The court discussed this and said that a classification based on age is not *per se* suspect. The court then said:

It might persuasively be argued that a statute which permits longer confinement of children does impinge on fundamental personal liberties, although, in the area of criminal law, courts have traditionally allowed legislatures considerable leeway in classifying offenses and offenders for sentencing purposes. Apparently, it has not been thought that the possibility of a longer period of confinement, standing alone, calls for a strict standard of review.

If the purpose of permitting longer periods of detention for children was to punish youthful offenders more severely than adult criminals, the application of a strict standard of review would seem justified. But where the legislative purpose is to benefit the affected class, a less strict standard would seem proper. We are familiar with the literature reflecting disillusionment concerning the practical administration of the rehabilitative ideal, and the burgeoning literature of criticism of the juvenile system in this country. But, as the Texas Supreme Court pointed out only a few days ago, "while we must accept as true much of the dismal picture painted in *Gault* as to the abuses of the juvenile system, we cannot condemn out of hand the Texas Youth Council, the juvenile judges, and other trained people working in this field. The policy of the juvenile laws has been fixed by the Texas legislature and we conceive it to be our duty to uphold the spirit of that law * * *." The purpose of the juvenile laws is benign, rather than invidious. Whether the law is actually beneficial to the affected class is a question which is not susceptible of easy judicial determination. The determination of the beneficial effects of our system depends, at least in part, on complicated factual judgments of whether a juvenile program helps or impedes the salvation of child offenders. It is not necessary, in this case, to hold that the required judgment is of the sort that should be left to the political processes. But we do hold, in the absence of at least some data indicating that the legislative promise of treatment rather than punishment is not, in fact, being kept, we should not attempt, by a reasoning process alone, to determine whether the promised benefits are, in fact, being accorded to juvenile offenders.

If, in fact, in Texas the term "training school" is but a euphemism for prison; if the promised "treatment" consists of nothing more than confinement and disciplinary measures not substantially different from those characteristics of our adult penitentiaries; if, in fact, what is called rehabilitative treatment is indistinguishable from ordinary penal confinement in caged and demoralizing idleness, then, perhaps, a court would not be unwilling to cut through the verbal camouflage and condemn the system because of the exposed realities. But the record before us is bare of an indication that the promise of treatment and rehabilitation has been broken, and that the legislative declaration of purpose is no more than cant and hypocrisy used to justify what is essentially a system that does no more than provide longer terms of imprisonment for children. [at 947–948]

The Court affirmed the judgment of the trial court.

See also *R. R. v. State, supra,* 448 *S. W.* 2d 187.

We prefer to follow *Smith v. State, supra.* In our opinion its reasoning is persuasive, whereas *In re Wilson, supra,* is distinguishable on its facts.

The strict test of equal protection is not applicable.

■ The classification established by the Legislature for disposition of violators of criminal statutes based upon age (*N. J. S. A.* 2A:4-37) does not violate the equal protection clause of the Fourteenth Amendment.

## VI

Aside from the foregoing we point out that the juvenile in this case was not committed to the Youth Correctional Institution Complex for being under the influence of a narcotic drug. He was found to be delinquent for that violation. His commitment, however, was based not so much on the finding of that violation but rather on his entire record as shown by the probation department presentence report. That report disclosed that he had been placed on probation on December 2, 1968 charged with general incorrigibility. Since that time he had made little or no adjustment to probationary supervision. He had been before the court on numerous occasions for delinquent behavior. On July 16, 1969 he was charged with assault and battery and escape from the custody of the police. On that occasion he was adjudicated a delinquent and received a suspended sentence to Annandale, with the probation officer to arrange placement at Highfields. He was dismissed from Highfields because of his failure of adjustment. He then received 30 days' detention. Following his release from detention his behavior had deteriorated to such an extent that he was an habitual user of heroin and was involved in two new complaints. The report further showed that from conferences with his mother it was learned that she was unable to control him around the house.

Subject continues to use hard drugs and has failed to attend the Plainfield Narcotics Clinic, when suggested by the probation officer. Subject continues to associate with delinquent youths within the Plainfield area and it is the opinion of this officer that if the subject is not incarcerated on these two complaints that he will become

involved in the future. In summary, subject has received full benefit of the probationary supervision and it is the opinion of this officer that further probationary supervision would not suffice in this case.

We are aware that in practice commitment is ordered by Juvenile Court judges only as a last resort. It is ordered where it is found that if the juvenile is not committed he would constitute a danger to himself or a danger to society; or where it is found that the juvenile is in serious need of rehabilitation which he cannot receive in the environment in which he is living even under probationary supervision, and other feasible means of help have been exhausted.

The issue tendered by the juvenile in this case is a false issue. He was not committed for an offense for which an adult could be committed for only six months. He was committed upon being found a juvenile delinquent in need of rehabilitation which he could not receive in the environment in which he was living even with probationary supervision, other feasible means of help having been exhausted.

## VII

Juvenile further argues that to incarcerate juveniles with adult offenders violates *N. J. S. A.* 2A:4–33 and is in contravention of *Johnson v. State,* 18 *N. J.* 422 (1955), *cert.* den. 350 *U. S.* 942, 76 *S. Ct.* 318, 100 *L. Ed.* 822 (1956). This argument was not presented to the trial court.

On February 5, 1971 this court ordered the juvenile released pending disposition of the appeal. Since that time he has pleaded guilty to a charge of breaking and entering. Commitment was suspended and on July 21, 1971 he became a member of the Job Corps in Clearfield, Utah. We were informed at the oral argument that he is still there.

We decline to consider this issue because no record was made below and also because as to this juvenile it is now moot, he being over the age of 18 years.

The order denying the motion is affirmed.